Virginia **MUENCHOW**, James A. Olson, and all other plaintiffs whose names, addresses and phone numbers are found on Attachment No. 1, attached hereto and expressly incorporated by reference herein, Plaintiffs,

v.

The **PARKER PEN COMPANY**, Defendant.

No. 84–C–966–C.

United States District Court, W.D. Wisconsin.

Aug. 19, 1985.

1406

Richard V. Graylow, Lawton & Cates, Madison, Wis., for plaintiffs.

Edward W. Bergmann, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

## ORDER

CRABB, Chief Judge.

On or about November 20, 1984, plaintiffs commenced a civil action for equitable relief against defendant Parker Pen Company in the Circuit Court for Rock County alleging that defendant had made misrepresentations of fact intended to induce them to terminate their seniority rights and accept severance pay benefits. On December 7, 1984, defendant Parker Pen Company filed a petition for removal of the action to this court pursuant to 28 U.S.C. § 1441(b), claiming that this court has original jurisdiction over the action pursuant to 29 U.S.C. §§ 185(a) and 1132(e)(1), because plaintiffs' claims are preempted under principles of federal labor law and by the provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*

The case is before the court on plaintiffs' motion for remand to the state court. From defendant's verified petition for removal, the affidavits and exhibits submitted by the parties, and the record transmitted from the state court, I find the following facts.

## FACTS

Prior to April 29, 1983, all of the plaintiffs in this action were employed by defendant Parker Pen Company at its Arrow Park plant, which is located in Janesville, Wisconsin. Defendant Parker Pen Company is an employer in an industry affecting commerce within the meaning of 29 U.S.C. §§ 185(a) and 1002(5).

Plaintiffs are former members of Local No. 663 of the United Rubber Workers, which represents employees of defendant and is a labor organization in commerce within the meaning of 29 U.S.C. § 185(a). At all times material to this action, plaintiffs were covered by a collective bargaining agreement between the United Rubber Workers and defendant.

In response to losses in several key world markets, defendant sought to modernize its Arrow Park plant. Defendant anticipated that modernization of the plant would require a reduction in the work force, and began discussing this concern with union representatives in March, 1983. As a result of these discussions, defendant and union representatives reached agreement on several measures, including a severance pay plan, designed to reduce the production work force and increase management flexibility. On March 27, 1983, the union membership ratified the measures.

Under the severance pay plan, employees of defendant who terminated their employment would receive (1) two weeks' wages per year of service up to 26 weeks, with a minimum severance pay of thirteen weeks; (2) medical insurance coverage up to a maximum of one year from the date of termination; (3) immediate payment of vacation pay earned in 1982 and 1983; (4) immediate vesting in the Parker Retirement Plan; and (5) extension of unemployment eligibility. In effect, employees of defendant were given the option of accepting benefits under the severance pay plan and terminating seniority, or of taking layoff and retaining recall rights under the basic collective bargaining agreement.

The company conducted informational meetings on April 26 and 27, 1983, to answer employee questions concerning implementation of the severance pay plan. Subsequently, plaintiffs applied for benefits under the severance pay plan by signing and submitting an "APPLICATION FOR SEVERANCE," with the understanding

that they had terminated their employment by submitting the application.

On or about November 20, 1984, plaintiffs commenced this action in the Circuit Court for Rock County. The complaint alleges that defendant made statements at informational meetings beginning in late March and continuing through April, 1983, to the effect that a maximum of 200 jobs would exist after modernization of the Arrow Park plant; that these statements constituted misrepresentations or material mistakes of fact; that plaintiffs relied on these statements in deciding whether to accept benefits under the severance pay plan and terminate their seniority; and that plaintiffs would not have accepted severance benefits or terminated their seniority but for the misrepresentations or material mistakes of fact. The relief requested in the complaint is rescission of the severance pay plan and reinstatement of plaintiffs to their previous positions at defendant's Janesville plant, together with back pay and full rights and benefits under the collective bargaining agreement.

Previously, plaintiff Muenchow had filed an unfair labor practice charge against defendant with the National Labor Relations Board alleging that defendant violated 29 U.S.C. § 158(a)(1) and (3) by representing at informational meetings that a maximum of 200 jobs would exist after modernization of the Arrow Park plant was completed, and thereafter exceeding that level of employment. In a letter dated March 31, 1984, the regional director informed plaintiff Muenchow that he was refusing to issue a complaint, finding that the charge was untimely and concluding that, in any event, "[defendant's] incorrect forecast of employment levels after plant renovation, in the absence of any independent violations of the Act, does not itself demonstrate discrimination against employees because of their union activities."

In early June, 1984, plaintiff Muenchow and four others filed a grievance under the provisions of the collective bargaining agreement between defendant and the United Rubber Workers. The grievance alleged that, during informational meetings concerning the severance pay plan, defendant misrepresented that a maximum of 200 jobs would exist after modernization of the plant was completed. Claiming that this alleged misrepresentation caused them to terminate their seniority, plaintiff Muenchow and the others who filed the grievance sought "reinstatement of severed employees with full benefits." Later, the union membership voted at a meeting against taking the grievance to arbitration. Defendant has not received a demand for arbitration.

## OPINION

▮ Federal question removal is governed by 28 U.S.C. § 1441(b), which provides that:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

Generally, an action is removable under § 1441(b) only where it appears from the face of the complaint, unaided by the answer or petition for removal, that a right arising under federal law is an essential element of the plaintiff's claim and is the subject of a genuine and present controversy. *Gully v. First National Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936); *Oglesby v. RCA Corp.*, 752 F.2d 272, 275 (7th Cir.1985).

▮ This so-called "well-pleaded complaint rule" has an exception. A plaintiff cannot defeat the defendant's right of removal by using "artful pleading" to disguise an essentially federal claim in terms of state law. *Oglesby v. RCA Corp.*, 752 F.2d at 275. *See generally* 14A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3722 at 266–76 (1985). Where the essential nature of plaintiff's claim is federal, because of preemption or otherwise, the case may be removed regardless of the manner in which the claim was characterized in the complaint. 14A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3722 at 273–75

(1985). In these situations, a court may examine the record to determine the true nature of plaintiff's claim. *Oglesby v. RCA Corp.*, 752 F.2d at 277–78.

■ Once federal question removal jurisdiction is challenged, the party seeking removal has the burden of establishing that removal was proper. *Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir.1976). The complaint in this case does not allege any violation of federal law. Nevertheless, defendant contends that plaintiffs' claims of misrepresentation and mutual mistake of fact must be recharacterized as arising under federal law because they are preempted both by the primary jurisdiction of the NLRB over unfair labor practice disputes and by 29 U.S.C. § 185(a). Defendant argues therefore that federal question removal is proper under principles of federal labor law. In addition, defendant contends that federal question removal is proper under 29 U.S.C. § 1132(e)(1) because plaintiffs' state law claims are preempted by ERISA, 29 U.S.C. § 1144(a).

*Federal Labor Law Preemption and Removal Based On § 185(a)*

Defendant contends that plaintiffs' claims must be preempted to protect the primary jurisdiction of the NLRB over unfair labor practice disputes. The primary jurisdiction doctrine has its origins in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). In *Garmon*, the United States Supreme Court held that the jurisdiction of state courts or agencies must yield to the exclusive primary competence of the NLRB if the activities sought to be regulated are either *arguably protected* as "concerted activities" under 29 U.S.C. § 157 or *arguably prohibited* as unfair labor practices under 29 U.S.C. § 158. *Id.* at 244–45, 79 S.Ct. at 779. The rule is designed to avoid the potential for jurisdictional conflict between state courts or agencies and the NLRB by ensuring that primary responsi-

bility for interpreting and applying §§ 157 and 158 remains with the NLRB. *Brown v. Hotel & Restaurant Employees & Bartenders*, —— U.S. ——, 104 S.Ct. 3179, 3186–87, 82 L.Ed.2d 373 (1984).

■ However, there are exceptions to the primary jurisdiction doctrine. The doctrine does not apply if the activity sought to be regulated is a "merely peripheral concern" of the NLRA, or if the activity touches interests that are "so deeply rooted in local feeling and responsibility" that it cannot be inferred that Congress intended to deprive the states of the power to act. *San Diego Building Trades Council v. Garmon*, 359 U.S. at 245–46, 79 S.Ct. at 779–80. As the Court recently noted in *Allis-Chalmers Corp. v. Lueck*, —— U.S. ——, 105 S.Ct. 1904, 1912 n. 9, 85 L.Ed.2d 206 (U.S. April 16, 1985), application of the primary jurisdiction doctrine established in *Garmon* essentially "requires a balancing of state and federal interests." [1]

■ Plaintiffs argue that the nature of the activity sought to be regulated in this case by state law is not arguably protected or prohibited because the regional director of the NLRB refused to issue a complaint. The United States Supreme Court rejected a similar contention in *Garmon*, concluding that a refusal by the general counsel to file a charge did not mean that a decision had been made that the conduct was not arguably protected or prohibited. 359 U.S. at 245–46, 79 S.Ct. at 779–80. *See also Local 926, International Union of Operating Engineers v. Jones*, 460 U.S. 669, 680, 103 S.Ct. 1453, 1461, 75 L.Ed.2d 368 (1983) (stating that "the *Garmon* pre-emption doctrine not only mandates the substantive pre-emption by the federal labor law in the areas to which it applies, but also protects the exclusive jurisdiction of the Board over matters arguably within the reach of the Act").

■ The activity sought to be regulated in this case is arguably protected or prohib-

---

**1.** The two exceptions to the primary jurisdiction doctrine do not apply if the conduct at issue is clearly protected by federal labor law, rather than arguably so protected. In that situation,

Congress has provided that federal law must prevail and preemption follows as a matter of substantive right. *Brown v. Hotel & Restaurant Employees & Bartenders*, 104 S.Ct. at 3187.

ited under §§ 157 and 158. *See Moore v. General Motors Corp.*, 739 F.2d 311 (8th Cir.1984) *cert. denied* — U.S. ——, 105 S.Ct. 2320, 85 L.Ed.2d 839 (1985) (holding that federal labor law preempted plaintiff's claims that the defendant employer had engaged in negligent misrepresentation and fraud by inducing her to sell her St. Louis home at a loss to move to Kentucky for a promised job which did not materialize). In signing and submitting the applications for severance, plaintiffs were exercising a right derived from the collective bargaining agreement which governed the terms and conditions of their employment; namely, the right to choose whether to accept benefits under the severance pay plan and terminate seniority or to forgo severance benefits and retain recall rights. In alleging that defendant misrepresented maximum employment levels to induce plaintiffs to accept severance benefits, plaintiffs have alleged conduct that relates to the terms and conditions of their employment. Such conduct is arguably protected or prohibited under §§ 157 and 158. *Id.* at 315.

■ Nevertheless, even where the activity sought to be regulated by state law is arguably protected or prohibited, state regulation may be permissible if the interest of the state in protecting its citizens is not counterbalanced by the harm to the federal regulatory scheme. *Local 926, International Union of Operating Engineers v. Jones*, 460 U.S. at 676, 103 S.Ct. at 1459; *Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180, 188–89, 98 S.Ct. 1745, 1752–53, 56 L.Ed.2d 209 (1978). Plaintiffs' state causes of action do not involve conduct that falls within any of the established exceptions to the *Garmon* preemption doctrine, *see International Union, United Automobile Workers*, 356 U.S. 634, 640, 78 S.Ct. 932, 935, 2 L.Ed.2d 1030. (1958) (violence or threats of violence); *id.* at 649, 78 S.Ct. at 941 (Warren, C.J., dissenting) (same); *Linn v. United Plant Guard Workers, Local 114*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (malicious libel); *Farmer v. Carpenters*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (outrageous conduct intended to cause severe emotional distress),

but plaintiffs urge that an exception should be recognized for the state causes of action alleged in this case, because those state causes of action encompass conduct that is of only peripheral concern to federal labor policy.

■ Plaintiffs emphasize that their claims focus on misrepresentations made by defendant during "face-to-face" encounters that preceded the signing by plaintiffs of the individual agreements to accept severance benefits and terminate seniority, and not on the negotiations underlying the collective bargaining agreement itself, contending that this supports a conclusion that defendant's conduct is only a peripheral concern to federal labor policy. This contention is not persuasive. As I have already stated, defendant's alleged conduct related to the exercise by plaintiffs of a right derived from the collective bargaining agreement between defendant and the United Rubber Workers. Such conduct cannot be said to be activity that is of only peripheral concern to the NLRA. *Moore v. General Motors Corp.*, 739 F.2d at 316.

Plaintiffs also appear to rely on *Belknap, Inc. v. Hale*, 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983) as support for the contention that their misrepresentation claim regulates activity that is of only peripheral concern to the NLRA. In *Belknap*, replacement employees who were laid off to make room for returning strikers brought suit against the employer to recover damages for misrepresentation, alleging that the employer had hired them with false promises of permanent employment. The Court held that the replacement employees' misrepresentation action would not interfere with the NLRB's determination of matters within its jurisdiction, and that the misrepresentation action was of no more than peripheral concern to the NLRA. *Id.* at 510–11, 103 S.Ct. at 3183.

Unlike the laid off replacement employees in *Belknap*, plaintiffs in the case before the court were entitled to the benefits of a collective bargaining agreement between the United Rubber Workers and defendant, and the relief they seek—rein-

statement with back pay and full benefits—is relief that the NLRB can provide. *Cf. id.* at 510, 103 S.Ct. at 3183 (stating that "[t]he strikers cannot secure reinstatement, or indeed any relief, by suing for misrepresentation in state court. The state courts in no way offer them an alternative forum for obtaining relief that the Board can provide.") Thus, *Belknap* provides no support for plaintiffs' contention.

Plaintiffs appear to argue also that any potential for interference with the federal regulatory scheme is lessened by the fact that federal labor law and their state law claims address distinctive concerns. According to plaintiffs, the central concern of federal labor law is whether defendant's misrepresentations constituted an unfair labor practice, whereas the only issues in the state court are whether defendant made misrepresentations to plaintiffs, and, if so, whether plaintiffs relied on those misrepresentations to their detriment. Plaintiffs contend that whatever risk of interference exists is outweighed by the interest of the state in protecting its citizens.

 However, the fact that the NLRB would be concerned primarily with whether defendant's conduct constituted an unfair labor practice does not save plaintiffs' causes of action from federal preemption. The NLRB would have to focus on the same conduct alleged to support a misrepresentation claim in state court to determine whether defendant was guilty of an unfair labor practice, and plaintiffs have not alleged any injury that could not be remedied or requested any relief that could not be awarded by the NLRB if it found that defendant's conduct constituted an unfair labor practice. *Cf. Farmer v. Carpenters*, 430 U.S. at 304–05, 97 S.Ct. at 1065–66 (emphasizing the discrete concerns of the federal scheme and the state tort law, including the NLRB's lack of concern with whether the conduct of the defendant union caused severe emotional distress and physical injury and its inability to award damages for pain, suffering, or medical expenses). Moreover, although the state certainly has an interest in protecting its citizens from misrepresentation, *see Belknap, Inc. v. Hale*, 463 U.S. at 511, 103 S.Ct.

at 3183, the state does not have as much interest in awarding reinstatement with back pay and full benefits as a remedy as it does in awarding damages as compensation for injuries that cannot be remedied by the NLRB. *Cf. Linn v. Plant Guard Workers*, 383 U.S. at 64 n. 6, 86 S.Ct. at 664 n. 6 (stating that the NLRB's lack of concern with and inability to provide redress for the "personal injury" caused by malicious libel aggravates the state's concern because "the refusal to redress an otherwise actionable wrong creates disrespect for the law and encourages the victim to take matters into his own hands"). I conclude that the state's interest in regulating the conduct at issue in this case does not counterbalance the risk of interference with the exclusive jurisdiction of the NLRB, and, therefore, that the primary jurisdiction doctrine preempts plaintiffs' state law claims.

 The general rule is that a case is not removable to federal court unless the case would have been within the subject matter jurisdiction of the federal court in the first instance. *See generally* 14A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3721 at 189 (1985). The primary jurisdiction doctrine provides no basis for removal jurisdiction in this court because it deprives both federal and state courts of subject matter jurisdiction over unfair labor practice disputes. *See Amalgamated Association of Motor Coach Employees v. Lockridge*, 403 U.S. 274, 286, 91 S.Ct. 1909, 1917, 29 L.Ed.2d 473 (1971); *San Diego Building Trades Council v. Garmon*, 359 U.S. at 245, 79 S.Ct. at 779; *Moore v. General Motors Corp.*, 739 F.2d at 311. Viewing the case before the court solely in terms of the primary jurisdiction of the NLRB, I would have to dismiss plaintiffs' claims for lack of jurisdiction. No purpose would be served by remanding the case to the state court because the primary jurisdiction doctrine also deprives the state courts of jurisdiction over plaintiffs' claims.

However, I must consider the alternative possibility that the preemptive force of § 185(a) makes this case one that is proper-

ly subject to federal question removal.[2] The United States Supreme Court has held that a suit under § 185(a) for violation of a collective bargaining agreement may be brought in state or federal court even though the conduct sought to be regulated in the suit is arguably protected or prohibited. *Smith v. Evening News Association,* 371 U.S. 195, 197, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962); *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). Underlying this exception to primary jurisdiction is the rationale that by enacting § 185(a), Congress "deliberately chose to leave the enforcement of collective agreements 'to the usual process of the law.'" *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 101 n. 9, 82 S.Ct. 571, 575 n. 9, 7 L.Ed.2d 593 (1962) *quoting Charles Dowd Box Co. v. Courtney,* 368 U.S. at 513, 82 S.Ct. at 525. The distinguishing characteristic of a § 185(a) suit is that it arises out of an alleged breach of a collective bargaining agreement. By contrast, although it is an unfair labor practice for an employer to refuse to bargain collectively with employee representatives, *see* 29 U.S.C. § 158(a)(5), such a refusal would not give rise to a suit under § 185(a).

■■■■■ Since plaintiffs do not allege that defendant violated the terms of a collective bargaining agreement, the issue is whether plaintiffs' claims are nevertheless preempted by § 185(a). Unlike the *Garmon* preemption doctrine, which protects the primary jurisdiction of the NLRB over unfair labor practice disputes, § 185(a) preemption is based on actual federal protection of the conduct at issue. *Allis-Chalmers Corp. v. Lueck,* — U.S. —, 105 S.Ct. 1904, 1912 n. 9, 85 L.Ed.2d 206. Section 185(a) expresses a federal policy that the substantive law to be applied in suits for violation of a collective bargaining agreement "is federal law, which the courts must fashion from the policy of our national labor law." *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957). State

courts have concurrent jurisdiction in § 185(a) cases, *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483, but they are bound to interpret collective bargaining agreements according to the substantive principles of federal labor law, *Teamsters v. Lucas Flour Co.,* 369 U.S. at 103, 82 S.Ct. at 576, and the United States Supreme Court has held that § 185(a) preemption is so complete that any complaint that comes within the scope of its terms necessarily "arises under" federal law and is removable under 28 U.S.C. § 1441(b). *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 23–24, 103 S.Ct. 2841, 2853–54, 77 L.Ed.2d 420 (1983) *explaining Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).

■■■■ The terms of the collective bargaining agreement between the United Rubber Workers and defendant do not refer expressly to any rights or obligations that are similar to those created by the state law claims of deceptive misrepresentation pleaded in plaintiffs' complaint. This does not mean, however, that the dispute giving rise to plaintiffs' claims is outside the terms of the collective bargaining agreement. *See Allis-Chalmers Corp. v. Lueck,* 105 S.Ct. at 1913; *United Steelworkers of America v. Warrier Gulf Navigation Co.,* 363 U.S. 574, 583–84, 80 S.Ct. 1347, 1353–54, 4 L.Ed.2d 1409 (1960) (stating that "[t]he labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it").

In many instances, the scope of the terms of a collective bargaining agreement may be found in the scope of the parties' agreement to arbitrate. The collective bargaining agreement between the United

---

**2.** Section 185(a) provides that:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting com-

merce ... may be brought in any district court of the United States having jurisdiction of the parties...."

Rubber Workers and defendant contains a broad arbitration clause. Paragraph (c)(6) of Article VIII of the agreement provides that "[a]ny grievance or dispute including disputes over the interpretation of this contract may be arbitratable [subject to certain procedural requirements]." Because the dispute involved in this case raises the question whether defendant misled plaintiffs about their future work opportunity, it relates to the terms and conditions of plaintiffs' employment, and it is not unreasonable to conclude that the dispute is appropriate for arbitration. By definition, such a dispute can be brought in state or federal court under § 185(a) as a suit for violation of a collective bargaining agreement.

Nevertheless, the recent decision of the United States Supreme Court in *Allis-Chalmers Corp.* suggests that although this suit may be brought under § 185(a), the preemptive effect of that section does not require that the suit be so brought. In *Allis-Chalmers Corp.*, the Court examined the preemptive effect of § 185(a) on a suit alleging the tort of bad-faith handling of an insurance claim, specifically, a claim under a disability plan included in a collective bargaining agreement. In examining this question, the Court stated that § 185(a) preempts only those suits grounded on "state law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties," and concluded that the preemption analysis under § 185(a) "must focus ... on whether the tort action for breach of the duty of good faith as applied here confers non-negotiable state law rights on employers or employees independent of any right established by contract, or, instead, wheth-

er evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* 105 S.Ct. at 1912.

The Court's analyis in *Allis-Chalmers* suggests that the question for purposes of § 185(a) preemption is not simply whether the dispute underlying plaintiffs' claims may be subject to the terms of the collective bargaining agreement, but whether plaintiffs' claims rely upon state rules that do not exist independently of private agreements and that can be prospectively waived or altered by such agreements, and thus cannot be resolved without consideration of the collective agreement.[3] In the case before the court, preemption would not apply because plaintiffs' state law claims of deceptive misrepresentations rely upon state rules that exist independently of private agreements and that cannot be prospectively waived or altered by such agreements. *Cf. id.* 105 S.Ct. at 1914 (suggesting that, under Wisconsin law, the tort of bad faith handling of an insurance claim may be waived by private agreement because "it appears that the parties to an insurance contract are free to bargain about what 'reasonable' performance of their contract obligations entails"). I conclude therefore that plaintiffs' state law claims are not preempted by § 185(a).

Plaintiffs may have implied rights under the terms of the labor contract that duplicate the substantive rights secured by the state causes of action pleaded in the complaint.[4] But § 185(a) does not preempt a separate action to enforce parallel rights having legally independent origins simply because the underlying dispute may be

---

**3.** For an example of what would appear to be non-negotiable state law rights that exist independently of private agreements and that cannot be prospectively waived by such agreements, see *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. at 25 n. 28, 103 S.Ct. at 2854 n. 28, where the Court suggested that "a state battery suit growing out of a violent strike would not arise under [§ 185] simply because the strike may have been a violation of an employer-union contract." The conduct referred to in the Court's footnote also falls within the exception to *Garmon* preemp-

tion for conduct that is of only peripheral concern to the NLRA and that touches interests deeply rooted in local feeling and responsibility. *See International Union, United Automobile Workers*, 356 U.S. at 640, 78 S.Ct. at 935; *id.* at 649, 78 S.Ct. at 941 (Warren, C.J., dissenting). In this respect, it is unlike the conduct alleged in this case.

**4.** Plaintiffs may assert these implied rights under § 185(a), if they wish, by filing a new complaint in the state court or in this court.

subject to arbitration. *See Alexander v. Gardner Denver Co.,* 415 U.S. 36, 50, 94 S.Ct. 1011, 1020, 39 L.Ed.2d 147 (1974) (discharged union member could pursue his statutory rights under Title VII in court and his contractual rights through arbitration, because "no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums") *cited in Allis-Chalmers Corp. v. Lueck,* — U.S. ——, 105 S.Ct. 1904, 1912 n. 8, 85 L.Ed.2d 206.

■■■ Having concluded that § 185(a) does not preempt plaintiffs' claims, I conclude also that those claims cannot be recharacterized as "arising under" § 185(a), and, therefore, that they are not properly subject to federal question removal on the basis of that section. Because plaintiffs' claims are nevertheless preempted by the primary jurisdiction of the NLRB, those claims must be dismissed for lack of jurisdiction.

### *ERISA Preemption and Removal Based On § 1132(e)(1)*

ERISA contains an express preemption provision that provides, in relevant part, as follows:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter *shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan* described in section 1003(a) of this title and not exempt under section 1003(a) of this title....

29 U.S.C. § 1144(a) (emphasis added).

■■■ The preemptive scope of § 1144(a) is as broad as its language. If a state law has a "connection with or reference to" an employee benefit plan, it "relates to" such a plan within the meaning of that section. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85,

96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983).

Defendant argues that the severance pay plan is subject to ERISA, *see* 29 C.F.R. § 2510.3–1(a)(3); *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1352 (9th Cir.1984) (severance pay plan established or maintained by any employer or employee organization engaged in commerce or in any industry or activity affecting commerce is an employee welfare benefit plan within the meaning of ERISA), and that plaintiffs' claims of misrepresentation and mutual mistake of fact are preempted by § 1144(a) because they "relate to" the severance pay plan. Plaintiffs do not dispute that the severance pay plan is subject to ERISA. Instead, plaintiffs argue that the relationship between their claims and the severance pay plan is too tenuous to justify preemption under ERISA because they do not contest benefits under ERISA or protest the administration of those benefits, and because they seek rescission of the "APPLICATION FOR SEVERANCE," not rescission of the severance pay plan.[5]

There are only two reported cases dealing with the preemptive effect of ERISA on state law claims of misrepresentation. In *Provience v. Valley Clerks Trust Fund,* 509 F.Supp. 388, 391–92 (E.D.Cal.1981), the court held that ERISA did not preempt plaintiff's state law claim that defendant had fraudulently misrepresented the nature of benefits available under its medical plan. The court noted that the law of fraud did not have a direct effect on the plan and that it was a law of general application pertaining to an area of important state concern. *Id.* at 391. In addition, the court emphasized that allowing a state fraud claim would not conflict with the purposes of ERISA, but instead would further them. *Id.* at 392.

---

**5.** In their original complaint, plaintiffs sought relief in the form of rescission of the severance pay plan. After defendant removed the case to this court, plaintiffs filed an amended complaint seeking rescission of the "APPLICATION FOR SEVERANCE." This amendment does not affect the disposition of plaintiffs' motion for re-

mand. In any event, the general rule is that a plaintiff cannot force a remand by filing an amended complaint to eliminate the federal claim after the case is removed. *See generally* 14A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3722 at 276–78 (1985).

However, the opposite conclusion was reached by the court in *Ogden v. Michigan Bell Telephone Co.*, 571 F.Supp. 520, 522–24 (E.D.Mich.1983). In that case, plaintiffs brought a claim alleging that plan fiduciaries made false statements concerning the future availability of certain retirement benefits and that plaintiffs relied on those statements in electing early retirement. Following the decision of the Court of Appeals for the Eighth Circuit in *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1214–16 (8th Cir.1981) *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384, the court stated that "state claims are preempted if two conditions are satisfied: (1) Congress has indicated its intent to 'occupy the field' in the subject being regulated; and (2) Congress has provided a remedy for the wrong alleged." *Ogden v. Michigan Bell Telephone Co.*, 571 F.Supp. at 523. The court held that plaintiffs' fraudulent misrepresentation claim was preempted by ERISA, stating that § 1144 was an unambiguous expression of congressional intent to "occupy the field;" that defendants arguably violated both their fiduciary duty under ERISA to administer the plan solely in the interest of its participants and their duty to release to participants pertinent information concerning the plan; and that ERISA provided plaintiffs an express remedy for such violations. *Id.* at 523–24.

■■■ I agree that § 1144 is an unambiguous expression of congressional intent to "occupy the field." Moreover, I conclude that ERISA supplies a remedy for the wrong alleged in plaintiffs' complaint. To the extent that defendant had discretionary authority and responsibility in informing its union-member employees concerning their option to elect the severance pay plan, it acted in the capacity of a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A)(iii), which makes a person a fiduciary to the extent he or she has "discretionary authority or discretionary responsibility in the administration of such plan." As a fiduciary under ERISA, defendant was charged with a duty to administer the plan solely in the interest of plan participants. *See* 29 U.S.C. § 1104(a)(1). *See also Blau v. Del Monte Corp.*, 748

F.2d at 1352 (fiduciary responsibility standards of ERISA apply to employee welfare benefit plans such as severance plans).

Not surprisingly, defendant does not argue either that ERISA supplies plaintiffs a remedy for the wrong alleged in their complaint, or that ERISA imposed fiduciary duties upon it in providing information to its union-member employees concerning the availability of jobs after modernization of the plant. But assuming, as I must, that defendant made false statements of fact in informing its union-member employees concerning their option to elect the severance pay plan, defendant may have violated § 1104(a)(1), and plaintiffs have a remedy for such a violation under § 1132(a)(2).

Although plaintiffs do not allege that defendant was acting as a fiduciary under ERISA in making statements concerning its future employment needs, plaintiffs cannot avoid the preemptive effect of § 1144(a) by simply omitting from their complaint all references to a violation of § 1104(a)(1). *See Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. at 24, 103 S.Ct. at 2854 (suggesting that, as with 29 U.S.C. § 185(a), "any state action coming within the scope of [§ 1132(a)] of ERISA would be removable to federal district court, even if an otherwise adequate state cause of action were pleaded *without reference to federal law*") (emphasis added). Because ERISA supplies a remedy for the wrong alleged in plaintiffs' complaint, and because plaintiffs' claims of misrepresentation and mutual mistake of fact arise out of a common nucleus of fact, I conclude that both of plaintiffs' claims are preempted by § 1144(a). *Dependahl v. Falstaff Brewing Co.*, 653 F.2d at 1214–16; *Ogden v. Michigan Bell Telephone Co.*, 571 F.Supp. at 523.

The United States Supreme Court has suggested that the impact of state action on an employee benefit plan may be too tenuous, remote, or peripheral to warrant a finding that the act or law in question "relates to" the plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. at 100 n. 21, 103 S.Ct.

at 2901 n. 21 *citing American Telephone and Telegraph Co. v. Merry*, 592 F.2d 118, 121 (2d Cir.1979), which held that state garnishment of a spouse's pension income to enforce alimony and support orders was not preempted. *Cf. San Diego Building Trades Council v. Garmon*, 359 U.S. at 243, 79 S.Ct. at 778 (1959) (no preemption of state regulation where the activity regulated is of only peripheral concern to the Labor Management Relations Act). Having concluded that ERISA supplies plaintiffs a remedy for the wrong alleged in their complaint, I conclude also that defendant's activity is not of merely peripheral concern to ERISA.

Nevertheless, the conclusion that plaintiffs' claims are preempted by § 1144(a) does not mean that this court has removal jurisdiction based on § 1132(e)(1). Where, as in this case, plaintiff has a remedy under ERISA for the wrong alleged in the complaint, the effect of § 1144(a) preemption is to make plaintiff's claim "arise under" ERISA. *Cf. Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. at 24–27, 103 S.Ct. at 2854–56 (holding that, even assuming that an action by the state to enforce a tax levy would be preempted by ERISA, the two claims pleaded by the state in its complaint were not removable because § 1132(a) limits the parties entitled to relief to participants, beneficiaries, or fiduciaries, and the state's claims thus did not "arise under" ERISA). But it is well settled that a case removed from state court to federal court must be dismissed if the case is one that is within the exclusive jurisdiction of the federal courts. *See id.* at 24 n. 27, 103 S.Ct. at 2854 n. 27 (stating that "precedent involving other statutes granting exclusive jurisdiction to the federal courts suggests that, if such an action were not within the class of cases over which state and federal courts have concurrent jurisdiction, the proper course for a federal district court to take after removal would be to dismiss the case altogether, without reaching the merits"); *Reid v. United States*, 715 F.2d 1148, 1153–54 (7th Cir.1983) (holding that claims removed to the district court were properly dismissed because the district court's jurisdiction over the claims was exclusive). The theoretical justification for this rule is that removal gives the federal courts only derivative jurisdiction, *see generally* 14A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3722 at 284 (1985), and a federal court cannot acquire such derivative jurisdiction unless the case is one that was within the jurisdiction of the state court from which it was removed.[6]

■ Section 1132(e)(1) provides that the federal district courts shall have exclusive jurisdiction of civil actions brought by the Secretary of Labor or by a participant, beneficiary, or fiduciary.[7] Interpreting that section, the Court of Appeals for the Seventh Circuit has held that the federal district courts have exclusive jurisdiction over ERISA claims for breach of fiduciary duty. *Central States, Southeast and Southwest Areas Health Fund v. Old Security Life Insurance Co.*, 600 F.2d 671, 676 (7th Cir.1979). *See also* H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 5038, 5107.

---

6. Derivative jurisdiction problems do not arise where removal is based on § 185(a) preemption because federal and state courts have concurrent jurisdiction over actions brought under that section.

7. Section 1132(e)(1), 29 U.S.C., provides as follows:

Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent juris- diction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B).

Although § 1132(e)(1) provides that state courts have concurrent jurisdiction over actions under subsection (a)(1)(B), that subsection covers only suits to recover or clarify benefits due under a particular plan which do not involve application of ERISA. *See* H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 5038, 5107. In this case, plaintiffs do not seek to recover or clarify the benefits due under the severance pay plan, and subsection (a)(1)(B) is thus inapplicable.

Because the effect of § 1144(a) preemption is to make plaintiffs' claims "arise under" ERISA, and because § 1132(e)(1) gives the federal courts exclusive jurisdiction over breach of fiduciary duty claims under ERISA, 29 U.S.C. § 1132(a)(2), I conclude that plaintiffs' claims must be dismissed. *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. at 24 n. 27, 103 S.Ct. at 2854 n. 27. In any event, plaintiffs' claims must be dismissed because I concluded previously that they are preempted by the primary jurisdiction of the NLRB.

ORDER

IT IS ORDERED that plaintiffs' motion for remand to the Circuit Court for Rock County is DENIED, and that plaintiffs' claims of misrepresentation and mutual mistake of fact are DISMISSED without prejudice to their filing a new complaint to assert claims under either 29 U.S.C. § 185(a) or 29 U.S.C. § 1132(a)(2), or both.