E–SYSTEMS, INC., Appellant,

v.

Ed TAYLOR & R.D. Burnett, Appellee.

No. 05–86–01217–CV.

Court of Appeals of Texas, Dallas.

Jan. 11, 1988.

Rehearing Denied Feb. 22, 1988.

Jess C. Rickman, III, Terri A. Hunter, Dallas, for appellant.

Cornel W. Walker, Dallas, for appellee.

Before DEVANY, LAGARDE and THOMAS, JJ.

LAGARDE, Justice.

E–Systems, Inc. appeals from a judgment awarding Ed Taylor and R.D. Burnett damages in their suit for additional retirement benefits. Because we agree with E–System's thirty-first point of error that the Employee Retirement Income Security Act, 29 U.S.C.A. § 1001 *et seq* (1974)[1] (ERISA) pre-empted Taylor's and Burnett's claims, we reverse the trial court's judgment and dismiss the cause.

The following facts underlying this controversy are undisputed. Taylor and Burnett are former employees of E–Systems who retired from the company and received retirement benefits under the union negotiated company pension plan. Taylor originally retired in 1978 and, at that time, the "multiplier rate" used to determine his monthly retirement benefits was $9. Burnett originally retired in 1980; the multiplier rate used to determine his monthly benefits was $10.

In 1981, Taylor and Burnett were re-hired by E–Systems. They returned to work and continued to draw monthly retirement benefits in addition to hourly wages until each finally re-retired in 1983. Shortly after Taylor and Burnett returned to work, each learned that if he worked one thousand hours during one calendar year, he could re-retire at the then current multiplier rate of $12. Each worked at least one thousand hours during a calendar year and when each retired, the multiplier rate of $12 was used to re-calculate the retirement

benefits to which each would be entitled. In re-calculating Taylor's and Burnett's retirement benefits, E–Systems also offset against the new benefits the retirement benefits each had already received, applying the following provision contained in the pension plan:

*Reemployment of Retired Participants:* If a retired Participant who is receiving Pension payments is reemployed by the Employer, Pension payments shall be continued until he has worked one thousand (1,000) Hours of Service after such reemployment within a Plan Year. No Pension payments shall be made from the Pension Trust during the period of such reemployment after the Participant has worked one thousand (1,000) or more Hours of Service after such reemployment in any Plan Year. Upon the subsequent termination of employment by a retired Participant, the Participant shall be entitled to receive a Pension based on his Benefit Service prior to the date of previous Retirement, increased by any Benefit Service credited during the period of his reemployment. *In the case of reemployment of a retired Participant who received any Pension payments prior to his reemployment, the Pension payable upon his subsequent Retirement shall be reduced by the Actuarial Equivalent of any Pension Payments, except Disability Pension payments, he received prior to his Normal Retirement Date during his previous period of Retirement.*

(Emphasis added). As a result, despite use of the higher multiplier rate, neither Burnett nor Taylor received an increase in his monthly retirement benefits.

The controverted facts at trial[2] concern oral representations that Taylor and Burnett contend were made by representatives

---

1. All statutory references are to 29 U.S.C.A. § 1001 *et seq.* unless otherwise noted.

2. E–Systems presents points of error concerning both the legal and the factual sufficiency of the evidence. Because of our disposition of this case, we do not reach those points of error.

Nevertheless, a recitation of some of the facts is necessary to place the issues in perspective. We recite only the facts necessary for that purpose and, in doing so, we apply neither of the respective standards for reviewing the legal or factual sufficiency of the evidence, nor make any hold-

of E–Systems. At trial, Taylor testified that about four months after he had returned to work, he went to Leslie Brown's office to turn in his resignation. Brown worked in the benefits section for E–Systems. Taylor testified that, during his discussion with Brown, Brown stated: "If you'll stay and work a thousand hours, we will completely re-retire you at the present day rate." Taylor testified that he did some calculations in his head and told Brown "that would mean somewhere between $50 and $60 a month raise." He testified that "I made the statement that I'd be stupid not to stay and take advantage of it, and he [Brown] said, 'you're absolutely right.'" Brown did not mention any "formula" by which benefits were to be calculated, nor did Brown refer Taylor to the employee handbook for further information regarding how retirement benefits were calculated. Taylor testified that, to him, "present day rate" meant twelve dollars a month per year of service with E–Systems.

Similarly, Burnett testified that he planned to quit work until he was told by Louis Pippin in the benefits section of E–Systems that "if you'll stay ... and work a thousand hours, Poncho, you can re-retire at the present rate of retirement." Burnett testified that he did calculations using the $12 multiplier that caused him to arrive at a monthly increase of $52 over the retirement benefits he was then receiving. He testified that he told Pippin "that sounds like a pretty good deal." He also testified that, to him, "present rate of retirement" meant the $12 multiplier.

■■■ Taylor and Burnett contend that their suit against E–Systems is simply one to enforce an oral agreement to pay additional monthly retirement benefits. Accordingly, they argue that their cause of action is entirely independent of ERISA and the E–Systems pension plan and is, therefore, not pre-empted by ERISA. E–

Systems, however, contends that Taylor's and Burnett's suit actually is one to enforce an oral agreement to modify the retirement plan by eliminating the offset provision of the plan in calculating Taylor's and Burnett's retirement benefits. Thus, E–Systems contends that the cause of action is pre-empted by ERISA. In light of the evidence on which Taylor and Burnett rely and the way the pertinent special issues at trial were worded, we agree with E–Systems. Thus, we do not reach the broader question of whether a suit given Taylor's and Burnett's characterization would also be pre-empted by ERISA.

Section 1144(a) of ERISA provides:

Except as provided in subsection (b)[3] of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

By enacting ERISA, Congress set out:

to protect the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing appropriate remedies, sanctions, and ready access to the Federal courts.

Section 1001(b). Accordingly, the pre-emption provisions of ERISA are deliberately expansive, designed to establish pension plan regulation as exclusively a federal concern. *Pilot Life Insurance Co. v. Dedeaux*, —— U.S. ——, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987); *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981).

---

ing on E–System's points of error complaining of the sufficiency of the evidence.

**3.** The provisions of subsection (b) of section 1144 are not applicable to the present case.

The term "state law" as used in section 1144 encompasses "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." Section 1144(c). For purposes of that section, a state's law includes its decisional law. *Light v. Blue Cross and Blue Shield of Alabama, Inc.*, 790 F.2d 1247, 1249 (5th Cir.1986). Of course, the state law must, under section 1144, also "relate to" an employee benefit plan. A law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 104 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). That phrase has given rise to some confusion where it is asserted to apply to a state law ostensibly regulating a matter quite different from pension plans. *Alessi*, 451 U.S. at 523, 101 S.Ct. at 1906. Nevertheless, courts have consistently held that, because of the broad goals of Congress in passing ERISA and the sweeping scope of the pre-emption section, ERISA pre-empts even state common law causes of action that do not explicitly concern pension plans. *See Dedeaux*, —— U.S. ——, 107 S.Ct. at 1553; *Alessi*, 451 U.S. at 524–25, 101 S.Ct. at 1907; *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1504 (9th Cir.1985). Instead, pre-emption of state law claims by ERISA depends on the conduct to which such a law is applied, not on the form or label of the law. *Scott*, 754 F.2d at 1504.

At trial, the jury affirmatively answered two special issues, one concerning Taylor, the other concerning Burnett, which asked:

> Do you find from a preponderance of the evidence that there was a contract between [each of the employees] and E–Systems, Inc. providing that [each employee] would receive increased retirement benefits on a monthly basis without regard to any offset or reduction as contained in the retirement plan?

Thus, it is clear that, although the common law cause of action asserted by Taylor and Burnett ostensibly does not regulate pension plans, the conduct relied on by Taylor and Burnett to establish their claims does, indeed, refer to and affect the administration of the pension plan.

Under similar facts, other courts have held that common law causes of action are pre-empted by ERISA. In *Ogden v. Michigan Bell Telephone Co.*, 571 F.Supp. 520 (E.D.Mich.1983), the employees had been told by the fiduciary of the company's severance benefits plan that the benefits would never again be available and that "anyone considering retirement should not wait for another offering of" the benefits. *Ogden*, 571 F.Supp. at 521. The employees, relying on this statement, retired and when the company later announced that the benefits would again be available, the employees brought suit, alleging *inter alia*, a cause of action for common law fraud. *Id.* In dismissing this claim, the court emphasized that Congress unambiguously indicated its intent to "occupy the field" of pension plan regulation by enacting section 1144(a) and that ERISA provided the employees with a remedy for any misrepresentation by the fiduciary. *Ogden*, 571 F.Supp. at 523. Accordingly, the court held that ERISA pre-empted the cause of action for fraud.

Similarly, in *Muenchow v. Parker Pen Co.*, 615 F.Supp. 1405 (W.D.Wisc.1985), the employees brought suit based upon misrepresentations by company officials concerning the scope of proposed lay offs. *Muenchow*, 615 F.Supp. at 1410. The employees, relying on these representations, accepted benefits under the severance pay plan and terminated their seniority with the company. *Id.* In dismissing the employees' suit for reinstatement and back pay, the court agreed that the severance pay plan was governed by ERISA and that their claim was, therefore, pre-empted by ERISA. *Muenchow*, 615 F.Supp. at 1416–17. The court held that "[a]lthough [the employees] do not allege that [the company] was acting as a fiduciary under ERISA in making statements concerning its future employment needs, [the employees] cannot avoid the preemptive effect of § 1144(a) by sim-

ply omitting from their complaint all references to a violation of § 1104(a)(1)" (governing fiduciary duties). *Muenchow,* 615 F.Supp. at 1417.

The holdings in *Ogden* and *Muenchow* appear to reflect the majority view concerning the scope of section 1144(a), although in *Provience v. Valley Clerks Trust Fund,* 509 F.Supp. 388 (E.D.Cal.1981), the court held that ERISA did not pre-empt the employees' state law claim that the company had fraudulently misrepresented the nature of benefits available under its medical plan. *Id.* at 391–92. In light of the Supreme Court's recent decision in *Dedeaux,* however, we believe that *Ogden* and *Muenchow* represent the sounder view.

Of course, *Ogden, Muenchow,* and *Provience* all concern causes of action based upon misrepresentation, while in the present case, Taylor and Burnett assert an oral agreement that, as stated in the special issues, each "would receive increased retirement benefits on a monthly basis without regard to any offset or reduction as contained in the retirement plan." Nevertheless, a cause of action based upon misrepresentation is analogous to the present case, as is a cause of action based on promissory estoppel, which has also been held pre-empted by ERISA. *See United Electrical, Radio and Machine Workers v. Amcast Industrial Corp.,* 634 F.Supp. 1135, 1143 (S.D.Ohio 1986).[4]

We also note that policy considerations weigh against Taylor's and Burnett's claim. Section 1104(a)(1)(D) requires that the plan be administered "in accordance with the documents and instruments governing the plan insofar as the documents and instruments are consistent with the provisions of [ERISA]." Section 1104(a)(1)(D). Thus,

were we to permit claims such as Taylor's and Burnett's, the administrator of the plan would be faced with the competing duties of administering the plan as written, yet ignoring certain provisions of the plan when calculating the retirement benefits due particular employees. *Cf. Blau v. Del Monte Corp.,* 748 F.2d 1348, 1353 (9th Cir. 1985) ("[t]he administrator of an employee welfare benefit plan ... has no discretion to secrete the plan, to flout the reporting, disclosure and fiduciary obligations imposed by ERISA, or to deny benefits in contravention of the plan's plain terms"). We also note that the E–Systems' pension plan was the result of a bargaining agreement between the company and the employees' union. Thus, permitting particular employees to assert claims that would result in the recovery of benefits not available to other employees might run afoul not only of ERISA, but also of the provisions of the National Labor Relations Act. We conclude that it is just such difficulties that Congress sought to avoid by enacting the sweeping pre-emption provision of ERISA. Thus, we hold that Taylor's and Burnett's claim is pre-empted by ERISA.

The trial court's judgment is reversed and the cause is dismissed.[5]

---

**4.** Other common law causes of action which have been held to be pre-empted by ERISA include tortious breach of contract, breach of fiduciary duty, and fraud in the inducement, *Dedeaux,* —— U.S. ——, 107 S.Ct. at 1551; bad faith refusal to pay claims and infliction of emotional distress, *Light* 790 F.2d at 1247–48; breach of employment agreement, *Scott,* 754 F.2d at 1505; and fraud, breach of contract, and

deceit, *Blau v. Del Monte Corp.,* 748 F.2d at 1356–57.

**5.** Because pre-emption concerns the trial court's subject matter jurisdiction over the claim, this court, once it determines that the trial court lacked subject matter jurisdiction, can only reverse the trial court's judgment and dismiss the cause. *See City of Garland v. Louton,* 691 S.W. 2d 603, 605 (Tex.1985).