James C. CATHEY and Bette
Cathey, Petitioners,

v.

METROPOLITAN LIFE INSURANCE
CO., Dow Chemical Co. and Michael
H. Maddolin, Respondents.

No. C-8323.

Supreme Court of Texas.

Jan. 30, 1991.

Joe K. Longley, Mark L. Kincaid, Austin, James W. Patterson, Houston, for petitioners.

Katherine D. Hunt, Judson R. Wood, A.J. Harper, II, Fulbright & Jaworski, Houston, Ace Pickens, Austin, William Toppeta, J.M. Lenaghan, D.J. Harman, New York City, for respondents.

## OPINION

GONZALEZ, Justice.

This is an appeal in a case involving "ERISA," the Employee Retirement Income Security Act of 1974. 29 U.S.C. §§ 1001–1461 (1988). An employee and his wife brought state law claims against his employer and its insured for alleged wrongful denial of a claim for in-home nursing care. The trial court granted a summary judgment to the defendants. The court of appeals affirmed the judgment of the trial court. 764 S.W.2d 286. We are called upon to decide whether causes of action stated under: 1) article 21.21, section 16 of the Texas Insurance Code; 2) section 17.50(a)(4) of the Texas Deceptive Trade Practices Act; and 3) article 3.62 of the Texas Insurance Code are superseded by the provisions of ERISA. We hold that ERISA preempts these causes of action in this case. We therefore affirm the judgment of the court of appeals.

## FACTS

Because this is a summary judgment case, the facts shown by the Catheys are taken as true. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). James Cathey was employed as a purchasing agent for Dow Chemical Company ("Dow") from 1973 to 1983. During his tenure at Dow, Cathey was told by Dow representatives that he and his wife, Bette Cathey, were covered by a group insurance plan (the Dow plan). In the mid–1970's Bette Cathey was diagnosed with multiple sclerosis, and her condition worsened so that eventually she could no longer walk without assistance. In 1982, Bette Cathey's physicians ordered home nursing care for her. These expenses were paid for under the group insurance plan covering Dow employees. In 1985, Metropolitan Life Insurance Company ("Met"), acting as the claims administrator for the Dow plan, refused to continue paying for the nursing care. Cathey contacted Michael Maddolin, group claim consultant with Met, who told him that there was no medical necessity for nursing care for Bette Cathey.

The Catheys filed suit against Dow, Met, and Michael Maddolin alleging common law and statutory causes of action; no ERISA causes of action were stated. The trial court found each cause of action to be preempted by ERISA and, following the Catheys' refusal to amend their petition to state an ERISA cause of action,[1] rendered summary judgment in favor of Dow, Met, and Maddolin. The court of appeals affirmed that judgment.

## ERISA

The Employee Retirement Income Security Act of 1974 subjects employee benefit plans to federal regulation. The act regulates both pension plans and welfare plans that provide benefits for contingencies such as illness, accident, disability, death, or unemployment. While it provides standards and rules governing reporting, disclosure, and fiduciary responsibility for pension and welfare plans, ERISA does not mandate any particular benefits. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90–91, 103 S.Ct. 2890, 2896–97, 77 L.Ed.2d 490 (1983).

Section 514(a) of ERISA provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws

---

1. The Catheys filed a separate ERISA suit against the Dow Chemical Company Medical Care Program during the pendency of this action. We note that the Fifth Circuit handed down its decision in that case on August 3, 1990, holding that the Catheys were entitled to partial recovery on their ERISA claim. *Cathey v. Dow Chemical Co. Medical Care Program*, 907 F.2d 554 (5th Cir.1990).

insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title.

This section is informally known as the "preemption" provision of ERISA. It is narrowed in scope by subsection 514(b)(2)(A), commonly known as the "saving" clause:

> Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any state which regulates insurance, banking, or securities.

Subparagraph 514(b)(2)(B), the "deemer" clause, modifies the saving clause by providing that no employee benefit plan:

> shall be deemed to be an insurance company or other insurer ... for purposes of any law of any state purporting to regulate insurance companies.

The operation of these provisions has been succinctly explained by the United States Supreme Court:

> To summarize the pure mechanics of the provisions quoted above: If a state law "relate[s] to ... employee benefit plan[s]," it is preempted. The saving clause excepts from the pre-emption clause laws that "regulat[e] insurance." The deemer clause makes clear that a state law that "purport[s] to regulate insurance" cannot deem an employee benefit plan to be an insurance company. (citations omitted).

*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987).

Section 1001(b) of Title 29 declares that it is the policy of ERISA to protect:

> the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b) (1988). In *Pilot Life,* the Supreme Court explained that the pre-

emption provision of ERISA was intended to have the effect of "reserv[ing] to Federal authority the sole power to regulate the field of employee benefit plans." 481 U.S. at 46, 107 S.Ct. at 1552 (quoting Representative Dent, 120 Cong.Rec. 29197 (1974)).

## THE DISPUTE

■ The Catheys contend that misrepresentations made by representatives of both Dow and Met are actionable under the Texas Insurance Code and Deceptive Trade Practices Act ("DTPA"). They argue that their claims do not "relate to" an employee benefit plan and thus are not preempted. In the alternative, the Catheys assert that even if their claims do relate to an employee benefit plan within the meaning of the preemption provision, they are preserved by the saving clause as laws regulating insurance.

Dow, Met, and Maddolin assert that section 16 of article 21.21 and article 3.62 of the Texas Insurance Code, and section 17.50(a)(4) of the DTPA are state laws that "relate to" an ERISA plan and are therefore preempted. They further contend that the causes of action alleged by the Catheys are not saved from preemption by the saving clause because they conflict with the civil enforcement scheme provided in ERISA and are therefore displaced. Both Dow and Met pleaded ERISA preemption in their answers; Maddolin did not.

## "RELATE TO"

A state law, defined in section 1144(c)(1) to include all laws, decisions, rules, regulations, or other action having the effect of law, is preempted by ERISA only if it "relates to" a plan. 29 U.S.C. § 1144(a) (1988). We must therefore begin with the fundamental inquiry: When does a state law relate to an employee benefit plan?

■ The United States Supreme Court has loosely defined the parameters of the "relate to" requirement. "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection or reference to such a plan." *Shaw,* 463 U.S. at 96–97, 103 S.Ct. at 2899–2900. Also

the Court declared that "[t]he phrase 're-late to' was given its broad common-sense meaning." *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985). The Court has repeatedly stated that the words "relate to" should be construed expansively. *See Shaw,* 463 U.S. at 96–97, 103 S.Ct. at 2899–2900; *Pilot Life,* 481 U.S. at 46–48, 107 S.Ct. at 1552–53; *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 8, 107 S.Ct. 2211, 2215–16, 96 L.Ed.2d 1 (1987). ERISA preemption applies not only to state laws but to all forms of state action dealing with the subject matters covered by this federal statute. 29 U.S.C. § 1144(c)(1) (1988); *see also Shaw,* 463 U.S. at 98, 103 S.Ct. at 2900. In keeping with this broad interpretation, the Court held that a cause of action for wrongful termination related to an ERISA plan where it was based on the allegation that the employer fired the employee to avoid paying benefits under a pension plan. *Ingersoll–Rand Co. v. McClendon,* —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).[2]

Given these declarations by the Supreme Court, courts have not hesitated to find that state laws having an effect on employee benefit plans relate to such plans and are therefore preempted by ERISA. *See, e.g., Ramirez v. Inter–Continental Hotels,* 890 F.2d 760 (5th Cir.1989); *Boren v. N.L. Indus.,* 889 F.2d 1463 (5th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3283, 111 L.Ed.2d 792 (1990); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters.,* 793 F.2d 1456 (5th Cir. 1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987); *Kanne v. Connecticut Gen. Life Ins. Co.,* 867 F.2d 489, *cert. denied* 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989); *Misic v. Building Serv. Employees Health & Welfare Trust,* 789 F.2d 1374 (9th Cir.1986); *Juckett v. Beecham Home Improvement Prods., Inc.,* 684 F.Supp. 448 (N.D.Tex.1988); *E–Systems, Inc. v. Taylor,* 744 S.W.2d 956

(Tex.App.—Dallas 1988, writ denied); *Giles v. Texas Instruments Employees Pension Plan,* 715 S.W.2d 58 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Felts v. Graphic Arts Employee Benefits Trust,* 680 S.W.2d 891 (Tex.App.—Houston [1st Dist.] 1984, no writ). "Because of the breadth of the preemption clause and the broad remedial purpose of ERISA, 'state laws found to be beyond the scope of [the preemption provision] are few.'" *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1294 (5th Cir.1989).

The common law claim in *Pilot Life* was not alleged against the employee benefit plan, but against the insurance company that administered the plan. Nevertheless, the Court noted that the cause of action clearly related to a plan and was thus preempted. 481 U.S. at 47–48, 107 S.Ct. at 1553; *see also Ramirez,* 890 F.2d at 760, 762–63 (suit brought against former employer and its insurance carrier held to be preempted); *Cefalu,* 871 F.2d at 1292–93 (suit related to an ERISA plan even though it was alleged against the former employer and not the plan). The Catheys' claim for nursing care was made and denied pursuant to the Dow plan's terms, and they appealed this denial under the internal review provisions of the plan. We hold that the Catheys' claims against Dow and Met relate to an employee benefit plan; the claims are thus preempted unless a contrary result is mandated by the saving clause.

## ERISA'S EXCLUSIVE REMEDY SCHEME v. THE SAVING CLAUSE

■ The Catheys assert that even if their claims relate to an employee benefit plan, they are saved from preemption by section 1144(b)(2)(A), the saving clause. The saving clause saves from preemption state laws which regulate insurance. *Metropolitan Life,* 471 U.S. at 737, 105 S.Ct. at 2388; *Pilot Life,* 481 U.S. at 47, 107 S.Ct. at 1553. However, even the saving clause

---

**2.** Also, we note that the Supreme Court handed down *FMC Corporation v. Holliday* contemporaneously with *McClendon.* —— U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). However, that opinion does not impact our decision in

this case. In *Holliday,* the Court considered whether a state law prohibiting subrogation claims fell within ERISA's insurance saving clause. The state law did not conflict with ERISA's exclusive remedy scheme.

cannot save from preemption a state law that provides remedies not provided by ERISA. In *Pilot Life,* the Supreme Court announced that ERISA's civil enforcement remedies were intended to be exclusive. 481 U.S. at 54, 107 S.Ct. at 1556. *Pilot Life* involved allegations of improper processing of a claim for benefits. In holding that the plaintiff's claim for breach of the Mississippi common-law duty of good faith and fair dealing was preempted by ERISA, the Court stated, "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.; see also McClendon,* 111 S.Ct. at 484-85; *Mutual Life Ins. Co. v. Yampol,* 840 F.2d 421, 425 (7th Cir.1988).

Even if these insurance code provisions and the DTPA provisions were subject to the saving clause, the Court's opinions in *Pilot Life* and *McClendon* held that Congress intended all suits alleging improper claims processing be governed only by ERISA. *McClendon,* 111 S.Ct. at 485; *Pilot Life,* 481 U.S. at 52-54, 107 S.Ct. at 1555-56. Section 16 of article 21.21 and article 3.62 of the Insurance Code and section 17.50(a)(4) of the DTPA provide recovery that was not included under ERISA. The Court has decided that ERISA's civil enforcement scheme could not be supplemented by state law remedies. Therefore, a statutory remedy for improper claims processing is not available against an ERISA plan or its administrator.

## CONCLUSION

■ The Catheys seek to recover remedies not available under ERISA's civil enforcement provisions. Therefore, even if the provisions in question could be said to regulate the business of insurance for purposes of ERISA preemption analysis, they would still be preempted as laws that provide remedies that are inconsistent with the civil enforcement provisions provided in ERISA. *See Pilot Life,* 481 U.S. at 51-57, 107 S.Ct. at 1555-58; *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134,

146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985); *Ramirez,* 890 F.2d at 764; *Kelley v. Sears, Roebuck & Co.,* 882 F.2d 453, 456 n. 2 (10th Cir.1989); *Kanne v. Connecticut Gen. Life Ins. Co.,* 867 F.2d 489, 493-94 (9th Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989); *In re Life Ins. Co. of N. Am.,* 857 F.2d 1190, 1194 (8th Cir.1988); *Anschultz v. Connecticut Gen. Life Ins. Co.,* 850 F.2d 1467, 1469 (11th Cir.1988); *Juckett v. Beecham Home Improvement Prods.,* 684 F.Supp. 448 (N.D.Tex.1988); *McManus v. Travelers Health Network,* 742 F.Supp. 377 (W.D. Tex.1990); *Commercial Life Ins. Co. v. Superior Court,* 47 Cal.3d 473, 253 Cal. Rptr. 682, 764 P.2d 1059 (1988), *cert. denied sub nom. Juliano v. Commercial Life Ins. Co.,* 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 651 (1989). Accordingly, we hold that Texas Insurance Code section 16 of article 21.21 and article 3.62 as well as DTPA section 17.50(a)(4) are preempted by the provisions of ERISA in the context of the facts of this case. Dow and Met properly pleaded ERISA preemption in their answers; Maddolin did not. We agree with the court of appeals, however, that the preemption of the Catheys' claims against Dow and Met extends to Maddolin because he acted as Met's employee in the course of its business. We therefore affirm the judgment of the court of appeals.

Concurring opinion by DOGGETT, J., joined by MAUZY and GAMMAGE, JJ.

DOGGETT, Justice, concurring.

In one brief writing the court today is forced to eliminate the rights of hundreds of thousands of Texas families to protect themselves from false, misleading, and deceptive practices in the handling of health and disability insurance claims. These are rights that had been secured by consumer protection statutes properly enacted by the Texas Legislature and that remain in effect today for those Texans who obtain their coverage directly from insurers rather than through their employers. Unfortunately, there is little that I or any other member of this court can do about this deplorable de-

mise of state-given rights other than to lament their passage.

Recognizing that *Ingersoll–Rand v. McClendon*, —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), and *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), control this case, I must concur with the court's opinion. By its reading of ERISA's preemption clause, the United States Supreme Court has restricted the very rights of employees—to avoid the delay or denial of benefits—that Congress sought to protect. Through peculiar federal judicial interpretation, a statutory addition to workers' rights has been converted into a statutory removal of those rights. The law has been reshaped into a form that achieves the converse of its original purpose. Identical claims are now treated differently depending on whether the claimant is insured individually or through an employer. Those insured through their employers are denied by ERISA preemption the safeguards afforded by Texas to their fellow citizens. I join with the growing number of courts and commentators who express the concern that through continued misconstruction, ERISA has become "quicksand" that "will continue to expand and to preempt everything in its meandering path." *Jordan v. Reliable Ins. Co.*, 694 F.Supp. 822, 835 (N.D.Ala.1988). For the over 56 million Americans who are enrolled in group health insurance plans like the one in which James Cathey was a member,[1] ERISA has become more than mere quicksand; it has become a black hole.

Through ERISA, Congress sought "to assure that individuals who have spent their careers in useful and socially productive work will have adequate incomes to meet their needs when they retire." H.Rep. No. 807, 93d Cong., 2d Sess. 3, *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4670. The measure responded to increasing abuses against workers caused by irresponsible management of pension and welfare benefit funds. In its "declaration of policy," Congress noted:

that despite the enormous growth in such plans many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans; that owing to the inadequacy of current minimum standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered; that owing to the termination of plans before requisite funds have been accumulated, employees and their beneficiaries have been deprived of anticipated benefits.

29 U.S.C. § 1001(a) (1974). The primary objective of the legislation was "to increase the rights of employees by imposing strict fiduciary duties on employers and benefit plan administrators and by providing the employees with the civil remedies in section 502(a)." Note, *Punitive Damages and ERISA: An Anomalous Effect of ERISA's Preemption of Common Law Actions*, 65 Wash.U.L.Q. 589, 609 (1987).

In view of this laudable goal, several commentators have expressed dismay at the paradox that has arisen since *Pilot Life:* the workers ERISA was intended to protect lack a remedy for wrongs unaddressed by the statute, while the companies targeted by Congress employ ERISA as an effective shield against responsibility for wrongful processing of claims. The first manifestation of this incongruous result is that workers covered by group benefit plans have been denied state causes of action that had been available prior to the Act's passage. *Id. See also*, Note, *Blind Faith Conquers Bad Faith: Only Congress Can Save Us After Pilot Life Insurance Co. v. Dedeaux*, 21 Loy.L.A.L.Rev. 1343, 1381 n. 303 (1988) (hereinafter Note, *Blind Faith* ) (observing the lack of Congressional intent to preempt state causes of action for breach of a covenant of good faith and fair dealing). Second, persons covered by group benefit plans are limited to ERISA's remedies, while individual insurance policyholders retain the full range

---

1. U.S. Census Bureau, 1990 Statistical Abstract 413 (1990).

of state remedies. *Id.* at 1347.[2] The harm is exacerbated by the reality that employees seldom have a voice in selecting their company's group insurer. Whether taken separately or together, these developments evince a disturbing disregard for Congress' overriding intent to protect the participants and beneficiaries of group benefit and pension plans. Their aim is best served by reading ERISA's remedies as a floor rather than a ceiling, and by respecting the traditional deference given to state insurance regulations as mandated by the McCarran–Ferguson Act, 15 U.S.C. § 1011. Under ERISA, insurers who provide group benefit plans have little incentive to deal promptly and fairly with employee participants.[3] Indeed, for ERISA to preempt all state law that may be loosely defined as "relating to" employee benefit plans is "counterproductive to ERISA's objective of furthering, rather than debilitating, progressive employment law." Gregory, *The Scope of ERISA Preemption of State Law: A Study in Effective Federalism*, 48 U.Pitt. L.Rev. 427, 457 (1987).

Moreover, expansive preemption of state common law and statutes regulating the insurance industry upsets the equilibrium between the federal government and the states that Congress intended to preserve by enacting the saving clause, 29 U.S.C. § 1144(b)(2)(A), thereby eviscerating this once-important provision. In *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), the clause was initially given vitality by acknowledgment of the well-established rule that "[t]he presumption is against pre-emption, and we are not inclined to read limitations into federal statutes in order to enlarge their pre-emptive scope." *Id.* at 741, 105 S.Ct. at 2390. The presumption against preemption is particularly strong with respect to those areas, such as insurance, "traditionally regarded as properly within the scope of state superintendence." *Florida Lime and Avocado Growers v. Paul*, 373 U.S. 132, 144, 83 S.Ct. 1210, 1218, 10 L.Ed.2d 248 (1963); *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977).

In *Metropolitan Life*, while state-mandated policy inclusion of mental health coverage was related to the business of insurance and therefore within the scope of preemption, the saving clause directed that the law not be preempted. 471 U.S. at 739, 746–47, 105 S.Ct. at 2389, 2392–93. In so holding, the Court analyzed the legislative history of ERISA, and noted that the final version of the law included a preemption clause more broadly worded than those in the original versions submitted to the Conference Committee by the two houses of Congress. Rather than halting its analysis at that point, as it did in *Pilot Life*, 481 U.S. at 46, 107 S.Ct. at 1552, the Court proceeded to conclude that this expansion of the preemption clause "gave the insurance clause a much more significant role, *as a provision that saved an entire body of law from the sweeping general preemption clause.*" *Metropolitan Life*, 471 U.S. at 746 n. 23, 105 S.Ct. at 2392 n. 23 (emphasis added). The Court's holding thus refused to "impose any limitation on

---

**2.** The Supreme Court reinforced a third curious distinction—that between self-insured plans and those that obtain insurance from regulated insurance companies—in *FMC Corp. v. Holliday*, —— U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), discussed in the majority opinion, *supra*, at 388 n. 1. This distinction was introduced by the Court in *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985). In his dissent to *Holliday*, Justice Stevens describes the distinction as "broad and illogical," and adds:

> Had Congress intended this result, it could have stated simply that 'all State laws are pre-empted insofar as they relate to any self-insured employee plan.' There would then have been no need for the 'saving clause' to

exempt state insurance laws from the preemption clause, or the 'deemer clause,' which the Court today reads as merely reinjecting into the scope of ERISA's pre-emption clause those same exempted state laws insofar as they relate to self-insured plans.

*Holliday*, —— U.S. at ——, 111 S.Ct. at 411 (Stevens, J., dissenting).

**3.** Under 29 U.S.C. § 1132, ERISA plan participants or beneficiaries harmed by a lengthy delay in, or unreasonable denial of, benefits may bring a time-consuming and expensive action in court to recover no more than the benefits due under the plan. § 1132(a)(1)(B). The award of attorney's fees is possible, but solely within the discretion of the court. § 1132(g)(1).

the saving clause beyond those Congress imposed in the clause itself." *Id.* at 746, 105 S.Ct. at 2392.

In contrast to the *Metropolitan Life* Court's careful deference to Congress' intent to balance the preemption and saving clauses, the *Pilot Life* opinion added a consideration that tips the balance of federalism inexorably away from the states by reducing the saving clause analysis to an empty exercise. The Court interpreted ERISA's legislative history to support the notion that Congress had intended that the statute's remedies be exclusive. This holding was drawn from the statements of several members of Congress to the effect that ERISA was meant to "preempt the field." 481 U.S. at 46, 107 S.Ct. at 1552. Congress' intent that ERISA provide exclusive remedies, however, was subordinate to its effort to provide greater protections to workers covered by pension and welfare benefit plans. When viewed in this light, the preemption clause should be given no more than equal consideration with the saving clause, which remains to preserve state regulation of insurance that is equally meant to safeguard the interests of workers.[4] Instead, as one commentator asserts, "the *Pilot Life* Court gutted the saving clause of meaning." Note, *Blind Faith, supra,* at 1382.

Refusing an interpretation of *Pilot Life* that would require the preemption of a California statute regulating the bad faith conduct of insurers, one court appropriately concluded that to do so "would rewrite the saving clause to read: 'Nothing in this subchapter *except section 1132* shall be construed to exempt or relieve any person from any law of any State which regulates insurance. . . .' The Supreme Court strongly indicated in *Metropolitan Life* that this is not the law." *Graves v. Blue Cross,* 688 F.Supp. 1405, 1412 (N.D.Cal.1988) (emphasis in original). Unfortunately, this inter-

pretation has now been rejected by *McClendon*. *Pilot Life* and *McClendon* thus seize from the states the ability to "deter[ ] insurance companies from exploiting insureds when they are most financially vulnerable." Note, *Blind Faith, supra,* at 1397.

By affirming *Pilot Life*'s unfortunate mischaracterization of Congressional intent, the Supreme Court in *McClendon* takes another step away from the goals of federalism. States are no longer the laboratories of democracy[5] when it comes to protecting their consumers. States have been thwarted in their efforts to fill the federal void left in the regulation of insurance companies that provide benefit plans under ERISA. Gregory, *supra,* at 457. Ironically, this gap was initially created by the Congress in the McCarran–Ferguson Act, 15 U.S.C. § 1011, which entrusts to the States the regulation of "the business of insurance."

This federal court deprivation of state law protections stands in notable juxtaposition with the professed goal of some in Washington to return power to the states. The Texas courts and the Texas legislature are powerless to preserve the rights of workers covered by group benefit plans. Texans have little recourse but to petition their federal legislators to correct what has been an errant jurisprudential path. The time is long past for Congress to reconsider the expanse of ERISA and to resurrect the authority of the states to provide additional protections to their citizens.

MAUZY and GAMMAGE, JJ., join in this concurring opinion.

---

4. The Court correctly observed in *Metropolitan Life:* "While Congress occasionally decides to return to the States what it has previously taken away, it does not normally do both at the same time." 471 U.S. at 740, 105 S.Ct. at 2389. It seems that where ERISA is concerned, the Court has created an exception to this principle.

5. *See New State Ice Co. v. Liebmann,* 285 U.S. 262, 311, 52 S.Ct. 371, 386–87, 76 L.Ed. 747 (1932) (Brandeis, J., dissenting).