Elisa GRAVES, Appellant,

v.

Kenneth MACK, in his Official Capacity as Chief of Police, and The City of Galveston, Texas, Appellees.

No. 14–07–00163–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 11, 2007.

*id.* at 856.

10. Our disposition of this issue relieves us from having to address Linton's remaining issues. *See* Tex.R.App. P. 47.1.

Gregory B. Cagle, League City, for appellant.

Brian J. Begle, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices FROST and GUZMAN.

## OPINION

KEM THOMPSON FROST, Justice.

A former police officer, who was on probation at the time of her termination, sued a city and its chief of police, alleging that they failed to follow and apply provisions of Chapter 614, Subchapter B of the Texas Government Code when terminating her employment. This subchapter applies to police officers who are not covered by a civil service statute but exempts officers who are protected by a collective bargaining agreement that meets two requirements outlined in section 614.021(b). The trial court granted summary judgment in favor of the city. As a matter of first impression, the main issue on appeal is whether this subchapter applies to the city's termination of the police officer. Concluding that the trial court correctly determined that this subchapter does not

apply, we affirm the trial court's summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant/plaintiff Elisa Graves appeals the summary judgment granted in favor of appellees/defendants the City of Galveston and Kenneth Mack, in his official capacity as Chief of Police of the City of Galveston. The dispute arises out of the City's termination of Graves's employment as a Galveston police officer while she was still in the probationary period of her employment. The parties agree that Graves's termination was based on a pattern of off-duty misconduct during her probationary period and an allegation of a specific incident of off-duty misconduct that occurred five days before her termination.

Graves asserts that prior to her termination, she was entitled to certain procedural rights afforded to peace officers under sections 614.022 and 614.023 of the Texas Government Code. These sections provide that the head of a police department must consider only a written, signed complaint against an officer and that the officer is entitled to an investigation and to receive a copy of the written complaint before being disciplined or terminated.

Under the Fire and Police Employee Relations Act,[1] the City and its police officers executed a collective bargaining agreement. This collective bargaining agreement was in effect throughout Graves's employment from May 2, 2005 to October 25, 2005. The City also had adopted the Fire Fighters' and Police Officers' Civil Service Act (hereinafter "Civil Service Act") which, inter alia, provides for administrative procedures by which police

---

1. TEX. LOCAL GOV'T CODE ANN. §§ 174.001, *et seq.* (Vernon 2006) (identifying, among other things, the right of police officers and fire fighters to organize for collective bargaining).

officers can appeal disciplinary actions.[2] Article 28 of the collective bargaining agreement between the City and its police officers makes reference to the Civil Service Act provisions for appeals of disciplinary decisions. The parties agree that Graves was not protected by the Civil Service Act at the time of her termination because she had not yet completed her probationary period.[3] As a result, Graves was not entitled to the grievance or appeal procedure under the Civil Service Act following termination of her employment.

Graves filed this suit under the Texas Declaratory Judgments Act,[4] seeking various declarations to the effect that Subchapter B of Chapter 614 of the Texas Government Code (hereinafter "Subchapter B") applies to her termination. Both sides filed cross-motions for summary judgment as to whether Graves was entitled to the procedural protections of Subchapter B relating to investigation and discipline resulting from a complaint against an officer. The City and Mack maintain that Subchapter B did not apply to Graves under the unambiguous language of the statute. Moreover, the City and Mack maintain that Graves's employment rights, as a probationary peace officer, were defined by the collective bargaining agreement and Chapter 143 of the Texas Local Government Code. The trial court granted the City's and Mack's motion for summary judgment and dismissed Graves's claims with prejudice.

## II. Issues Presented

Graves presents two issues for review:

1. Did the trial court err by granting summary judgment in favor of the City and Mack and ruling that Subchapter B does not apply to the disciplinary proceedings of a probationary police officer in the City of Galveston Police Department?

2. Did the trial court err by failing to interpret and apply the procedural provisions of Subchapter B to a probationary police officer in the City of Galveston Police Department?

## III. Standard Of Review

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755–57 (Tex.2007). When, as in this case, the order granting summary judgment does not specify the grounds

---

2. *Id.* §§ 143.001, *et seq.* (Vernon 1999 & Vernon Supp 2007).

3. *See id.* § 143.027(a) (identifying that a probationary period for a new police officer, fire fighter, or academy trainee lasts one year). Upon completion of the probationary period, the employee gains full civil service protec-

tion. *Id.* § 143.027(d); *see Jones v. Ojeda*, 21 S.W.3d 569, 571 (Tex.App.-San Antonio 2000, pet. denied) ("The Civil Service Act was designed to protect tenured employees.").

4. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 37.001, *et seq.* (Vernon 1997).

upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## IV. ANALYSIS

**Did the trial court err in granting summary judgment in favor of the City and its Chief of Police by finding that Subchapter B does not apply to the proceedings by which a probationary police officer was terminated?**

Graves, in her first issue, maintains that the trial court erred in granting summary judgment in favor of the City and Mack by concluding that Subchapter B did not govern grievances stemming from investigations or disciplinary matters pertaining to the City's peace officers.

### Application of Chapter 614 of the Texas Government Code

▆▆ Chapter 614 of the Texas Government Code outlines general provisions applicable to peace officers and fire fighters employed by political subdivisions within the state. *See* TEX. GOV'T CODE ANN. §§ 614.001, *et seq.* (Vernon 2006). Subchapter B provides rights and procedures regarding the investigation of complaints and discipline of employees. *Id.* §§ 614.021–.023 (providing administrative procedures by which certain employees may appeal disciplinary actions against them). However, under section 614.021(b), these procedures and rights do not apply to certain peace officers and fire fighters:

[S]ubchapter [B] does not apply to a peace officer or fire fighter appointed or employed by a political subdivision that is covered by a meet and confer or collective bargaining agreement under Chapter 143 or 174, Local Government Code, if that agreement includes provisions relating to the investigation of, and disciplinary action resulting from, a complaint against a peace officer or fire fighter, as applicable.

*Id.* § 614.021(b). Under section 614.021(b), when a collective bargaining agreement exists under Chapter 143 or 174 of the Texas Local Government Code [5] and provisions in that agreement relate to the investigation of, and disciplinary action resulting from, a complaint against a peace officer, peace officers covered by the agreement are not covered by subchapter B. *See id.*

### Interpreting the Second Requirement of Section 614.021(b)

▆▆ In interpreting a statute, a court must determine and apply legislative intent. *American Home Prods. Corp. v. Clark*, 38 S.W.3d 92, 95 (Tex.2000). If a statute is unambiguous, a court should interpret the statute according to the plain meaning of the statute's words. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999). Legislative intent is gleaned from the statute as a whole, and statutes are interpreted to give effect to every part of the whole. *State ex rel. State Dep't of Highways & Public Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002); *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex.1998).

5. *See supra* nn. 1, 2 (explaining that the Fire and Police Employee Relations Act, Chapter 174, and the Civil Service Act, Chapter 143, of the Texas Local Government Code provide rights to police officers). In this case, the parties agree that the City has adopted both acts. The collective bargaining agreement is executed by the City and its police officers under the Fire and Police Employee Relations Act and makes reference to the Civil Service Act appeals procedures in Article 28 of the agreement.

The parties agree that the collective bargaining agreement between the City and its officers exists under Chapter 174 of the Texas Local Government Code as recognized in Article 3(A) of the agreement. Therefore, the first requirement of the exemption in section 614.021(b) is met. However, the parties disagree as to whether, under the unambiguous language of the statute, the agreement's provisions meet the second requirement that the provisions relate to the investigation of, and disciplinary action resulting from, a complaint against a peace officer. TEX. GOV'T CODE ANN. § 614.021(b).

Under the second requirement, to be exempt from Subchapter B coverage, provisions within a collective bargaining agreement must relate to the investigation of, and disciplinary action resulting from, a complaint against the peace officer. *Id.* The parties have not cited, and this court has not found, any cases interpreting this language from section 614.021(b) of the Government Code. One issue is whether, to fall under the second requirement, the agreement must provide procedures for investigation and disciplinary action.

■ The United States Supreme Court and the Texas Supreme Court have determined that the ordinary meaning of "relating to" is "having a connection with or reference to" and that this is a broad term. *See Metro. Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2388–89, 85 L.Ed.2d 728 (1985); *Cathey v. Metro. Life Ins. Co.,* 805 S.W.2d 387, 389–90 (Tex.1991). We conclude that, under the plain and ordinary meaning of "relating to," the agreement in question need only include provisions having a connection with or reference to the investigation of, and disciplinary action resulting from, a complaint against peace officers or fire fighters, to satisfy the second requirement of section 614.021(b). *See Metro. Life Ins. Co.,* 471 U.S. at 739, 105 S.Ct. at 2388–89; *Cathey,* 805 S.W.2d at 389–90. The agreement need not provide or set forth procedures for investigation and disciplinary action.

## The Collective Bargaining Agreement and Applicable Provisions

■ Article 33 of the City's collective bargaining agreement contains provisions relating to both the investigation of, and disciplinary action resulting from, complaints against police officers. Additionally, Article 28 relates to discipline within the plain meaning of the phrase. We conclude that the agreement's provisions relate to both investigation and discipline. As a result, these provisions satisfy the second requirement of section 614.021(b), which exempts the City from subchapter B.

Article 33 sets forth a "Police Officer Bill of Rights." This Bill of Rights has a connection with and refers to the investigation of a complaint against a peace officer. Therefore, this article sufficiently relates to investigation by incorporating detailed procedures to be followed during an investigation. *See Metro. Life Ins. Co.,* 471 U.S. at 739, 105 S.Ct. at 2388–89; *Cathey,* 805 S.W.2d at 389–90. Although Graves argues that Article 33 applies only to interrogation or polygraph exams, the contractual language shows that Article 33 provides detailed procedures that apply to a police officer "being questioned by the City as an object of an investigation which a reasonable person could believe will lead to discharge or criminal prosecution." Additionally, Article 33(B) provides that Article 33 shall not infringe upon an employer's "right and power to fully investigate matters it deems appropriate." This provision refers to investigation of a complaint against a peace officer.

Moreover, Article 33(C) provides that Article 33 shall not infringe upon an employer's "right and power to discipline employees." Although the article does not incorporate detailed procedures with respect to discipline, under the plain meaning of the phrase "relates to," the provision has a connection with and refers to disciplinary action resulting from a complaint against a police officer. *See Metro. Life Ins. Co.*, 471 U.S. at 739, 105 S.Ct. at 2388–89; *Cathey*, 805 S.W.2d at 389–90. Because Article 33 of the agreement relates to both investigation and discipline, the City is exempt from Subchapter B under section 614.021(b).

In addition, Article 28 of the collective bargaining agreement also relates to disciplinary matters. Article 28 states that "[d]isciplinary matters shall not be subject to any of the terms of this Agreement. Any appeals of disciplinary decisions of the City shall comply with the requirements of the Texas Fire Fighters' and Police Officers' Civil Service Act, Chapter 143, Local Government Code." Graves contends that under Article 28, no provisions within the agreement govern discipline and that Article 28 adopts Chapter 143 for appeals only. Graves argues that the first sentence of Article 28 negates application of the agreement and its provisions to any disciplinary matters such that the agreement no longer relates to discipline.

In Article 28, the parties appear to be saying that disciplinary matters shall be handled under the procedures of the Civil Service Act rather than under procedures set forth in the collective bargaining agreement. Nonetheless, presuming without deciding that Graves's interpretation of Article 28 is correct, this article would adopt appeals procedures regarding disci-

plinary decisions and therefore would relate to discipline.[6] *See Metro. Life Ins. Co.*, 471 U.S. at 739, 105 S.Ct. at 2388–89; *Cathey*, 805 S.W.2d at 389–90.

Under the unambiguous meaning of Articles 28 and 33, we conclude that the collective bargaining agreement meets the second requirement of section 614.021(b), such that the City is exempt from subchapter B.

## V. CONCLUSION

The City's collective bargaining agreement meets the two requirements of section 614.021(b), which exempts such political subdivisions by virtue of: (1) their execution of a collective bargaining agreement pursuant to Chapter 174 of the Texas Local Government Code and (2) their inclusion in the agreement of provisions relating to the investigation of, and disciplinary action resulting from, a complaint against a peace officer or fire fighter. Graves, as a probationary City employee, is not entitled to procedures in Subchapter B because the City is exempt from its coverage. *See* TEX. GOV'T CODE ANN. § 614.021(b). Under the unambiguous language of the relevant statutes and the collective bargaining agreement, Subchapter B does not apply to the City as a matter of law. Because this subchapter does not apply to the City, the trial court correctly granted the motion for summary judgment filed by Mack and the City. Accordingly, we overrule Graves's first and second issues and affirm the trial court's judgment.

---

6. Indeed, even if Article 28 meant that the collective bargaining agreement did not apply to disciplinary matters, this article still would have a connection with and refer to disciplinary actions.