

NUMBER 13-11-00746-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**VICTOR H. TAMAYO,**                                                              **Appellant,**

**v.**

**SHERIFF OMAR LUCIO,**
**IN HIS OFFICIAL CAPACITY,**                                          **Appellee.**

---

### On appeal from the 138th District Court
### of Cameron County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes**
**Memorandum Opinion by Justice Benavides**

A trial court dismissed appellant Victor Tamayo's case by granting a plea to the jurisdiction filed by the appellee, Cameron County Sheriff Omar Lucio in his official capacity. In two issues, Tamayo argues that: (1) governmental immunity did not bar

his suit because he alleged a statutory violation and was not seeking monetary damages, and (2) the Cameron County Sheriff was the proper defendant in his suit alleging an ultra vires act.  We affirm, in part, and reverse and remand, in part.

## I.  BACKGROUND

Tamayo was a licensed and commissioned peace officer for the State of Texas. After Tamayo worked for several municipal police departments, then-Sheriff Conrado Cantu commissioned Tamayo as a Sheriff's Deputy for Cameron County in 2001.  With this commission, Tamayo received a badge from the Cameron County Sheriff's Department that identified him as a full-time peace officer.  In 2005, Tamayo was re-appointed by the current Cameron County Sheriff, Omar Lucio, as a Deputy Bailiff "with full power and authority to perform all the acts and duties required. . . ."  From 2005 to 2009, Tamayo worked as a bailiff in the 107th Judicial District Court for the Honorable Benjamin Euresti, Jr.  His job responsibilities included screening people who entered the Cameron County Courthouse and providing additional security in Judge Euresti's courtroom.  Of note, at this time in Cameron County, bailiffs' paychecks were issued through the county's "Courthouse Security Department" and not through the Sheriff's Department.

Tamayo alleges that, on May 8, 2009, he issued a written reprimand for insubordination to fellow Deputy/Bailiff Elizabeth Avitia.  Deputy Avitia then complained about Tamayo's reprimand "upstairs" at the Cameron County courthouse.  On May 11, 2009, Judge Euresti terminated Tamayo's employment with the following letter:

2

As it may evidence, your services are no longer required and you are to turn all of your Cameron County issued equipment. Therefore, you are relieved from your duties effective today May 11, 2009 instanter.

After receiving this letter of termination, Tamayo appealed the decision to Sheriff Lucio. Tamayo asserted that, as a peace officer, he was entitled to the protections of chapter 614 of the Texas Government Code. TEX. GOV'T CODE ANN. § 614.001–.104 (West 2004 & Supp. 2011). Chapter 614 sets forth the procedures by which persons such as peace officers and firefighters can be disciplined and/or terminated. According to Tamayo's pleadings, Sheriff Lucio denied the appeal and eventually submitted an "F-5 Report of Separation of License" to the Texas Commission on Law Enforcement, reporting that Tamayo's commission was honorably discharged. Lucio's denial and subsequent actions, Tamayo claims, constituted an "ultra vires ratification" of Judge Euresti's termination.

Tamayo then appealed to the Cameron County Civil Service Commission, which dismissed his appeal for lack of jurisdiction. Bailiffs were not covered by the Civil Service Commission at the time.[1] The Civil Service Commission explained that it could not consider his complaint because he was not an employee of the Sheriff's Department, but rather an at-will employee of the Cameron County Courthouse Security Department.

Tamayo then filed suit, requesting: (1) a declaratory judgment, (2) a request for mandamus, and (3) a finding of wrongful termination and retaliation.[2] Although his

---

[1] Cameron County has since modified this policy to include bailiffs in their civil service commission.

[2] We refer to Tamayo's live pleading, entitled "Plaintiff's Fourth Amended Petition."

lawsuit was initially filed against the Cameron County Civil Service Commission, he later dismissed his claims against this entity and added Sheriff Lucio in his official capacity as Cameron County Sheriff. Tamayo argued that under chapter 614, he could not be terminated without being given written notice of the charges against him, which must be signed by the person making the complaint. *See id.* § 614.022. The complaint must also be fully investigated and there must be evidence to prove the alleged misconduct. *Id.* § 614.023(c).

Sheriff Lucio filed a plea to the jurisdiction, claiming that Tamayo was an at-will employee employed by the Cameron County District Courthouse Security Department, not a peace officer under the supervision of the Sheriff's Department. As a courthouse employee, Sheriff Lucio averred, Tamayo was not covered by chapter 614; thus, the sheriff's department had no duty to abide by those provisions. After a hearing, the trial court granted Sheriff Lucio's plea to the jurisdiction, thus dismissing Tamayo's claims. Tamayo appealed.

## II.    LAW REGARDING CHAPTER 614

Chapter 614 sets forth the procedures by which peace officers and firefighters in Texas can be disciplined and/or terminated. TEX. GOV'T CODE ANN. § 614.001–.104. This chapter defines employers as any "governmental entity that employs or appoints a peace officer or fire fighter . . . ." *Id.* § 614.001(1). The statute applies to complaints against any "peace officer under Article 2.12, Code of Criminal Procedure, or other law who is appointed or employed by a political subdivision of this state." *Id.* § 614.021(a)(3); *see* TEX. CODE CRIM. PROC. ANN. art. 2.12 (West Supp. 2011). Under

4

chapter 614, peace officers and firefighters are "entitled to an investigation and to receive a copy of the written complaint before being disciplined or terminated." *See Graves v. Mack*, 246 S.W.3d 704, 706 (Tex. App.—Houston [14th Dist.] 2007, no pet); *see also* TEX. GOV'T CODE ANN § 614.023. The complaint must be in writing and signed by the person making the complaint. TEX. GOV'T CODE ANN. § 614.022. Further, before being terminated, the complaint must be fully investigated and there must be "evidence to prove the allegation of misconduct." *Id.* § 614.023(c).

### III. PLEA TO THE JURISDICTION

**A. Applicable Law**

**1. Plea to the Jurisdiction**

A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's authority to determine the subject matter of a pleaded cause of action. *Tex. State Employees Union/CWA Local 6184 v. Tex. Workforce Comm'n*, 16 S.W.3d 61, 65 (Tex. App.—Austin 2000, no pet.). The existence of subject-matter jurisdiction is a question of law; thus, we review de novo the trial court's ruling on a plea to the jurisdiction. *Id.*

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We construe the pleadings liberally in favor of the plaintiff and look to the pleaders'

intent. *Miranda*, 133 S.W.3d at 226. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded an opportunity to amend. *Id.* However, if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* (citing *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002)).

If the plea challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issue raised, as the trial court is required to do so. *Bland Ind. Sch. Dist.*, 34 S.W.3d at 555. In a case in which the jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Miranda*, 133 S.W.3d at 227. If a fact question exists, then the plea cannot be granted and the fact issue will be resolved by the fact finder. *Id.* However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.*

### 2. Sovereign Immunity

Under Texas law, sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits against the State or certain governmental units unless the State expressly consents to the suit. *Miranda*, 133 S.W.3d at 224. Governmental immunity operates in a similar way by offering governmental subdivisions, such as counties, cities,

6

and school districts, immunity from suit unless that immunity is clearly waived. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 300–31 n.11 (Tex. 2006) (explaining the difference between sovereign immunity and governmental immunity).

"Sovereign immunity protects the State from lawsuits for money damages." *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Immunity can be waived, but it must be "effected by clear and unambiguous language." TEX. GOV'T CODE ANN. § 311.034 (West Supp. 2011); *see City of New Braunfels v. Allen*, 132 S.W.3d 157, 161 (Tex. App.—Austin 2004, no pet.). The Texas Supreme Court has acknowledged, though, that "an action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars.'" *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) (citing *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997)). The high court elaborated that "suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity, even if a declaration to that effect compels the payment of money." *City of El Paso*, 284 S.W.3d at 372.

**B. Discussion**

**1. The Applicability of Chapter 614**

It is undisputed that Tamayo was appointed by the Cameron County Sheriff's Department in 2001 by then-Sheriff Cantu. Documents from the Texas Commission on Law Enforcement reflect that, in January 2001, Tamayo was appointed as a "regular peace officer" with the "Cameron County Sheriff's Office." Tamayo was then

7

re-appointed in 2005 by the current Cameron County Sheriff, Omar Lucio, as a Deputy Bailiff "with full power and authority to perform all the acts and duties required . . . ."

In his brief, Sheriff Lucio refutes the contention that Tamayo was "employed" by the Cameron County Sheriff's Department. Instead, Sheriff Lucio argues that Tamayo was employed by the Cameron County Courthouse Security Department, a division separate and apart from the auspices of the sheriff's reach. As proof of this contention, Sheriff Lucio emphasized to the trial court that Tamayo was paid from the district court budget and not the Sheriff's Department. In fact, both parties at the hearing on the plea to the jurisdiction stipulated to this fact.

This argument, however, is irrelevant. Chapter 614 applies to complaints against any "peace officer under Article 2.12, Code of Criminal Procedure, or other law who is appointed *or* employed by a political subdivision of this state." TEX. GOV'T CODE ANN. § 614.021(a)(3) (emphasis added). Tamayo presented evidence that he was appointed by Cameron County as a Deputy "with full power and authority to perform all the acts and duties required. . . ." This appointment was filed and recorded in Book 21 of the "Record of Appointments" in Cameron County. We also note that Texas law requires that "the county sheriff shall have charge and control of the county courthouse, subject to the regulations of the commissioners court." *See* TEX. LOC. GOV'T CODE ANN. § 291.003 (West 2005). Tamayo worked in the county courthouse, a building over which Sheriff Lucio had statutory "charge and control." *Id.* Sheriff Lucio exercised this apparent "charge and control" when he submitted an "F-5 Report of Separation of License" to the Texas Commission on Law Enforcement, reporting that Tamayo's

8

commission was honorably discharged from his appointing agency, the "Cameron County Sheriff's Office."

Because we conclude that Tamayo was "appointed" by Cameron County, we need not address the issue of whether the sheriff's department or the courthouse security department "employed" him.[3]  *See* TEX. R. APP. P. 47.1.  We conclude that Tamayo was entitled to the procedural safeguards of chapter 614.  *See* TEX. GOV'T CODE ANN. § 614.021(a)(3).

### 2.  Governmental Immunity

### a.  Waiver of Immunity

Having concluded that Tamayo was covered by chapter 614, we turn to the issue of whether governmental immunity has been waived.   We agree with Sheriff Lucio that there is no clear and unambiguous general waiver of immunity built into chapter 614. *See* TEX. GOV'T CODE ANN. § 614.001–.104; *see Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002) (affirming that "[l]egislative consent to sue the State must be expressed in 'clear and unambiguous language'") (citing TEX. GOV'T CODE ANN. § 311.034; *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994)).

However, as noted earlier, the Texas Supreme Court has held that "suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity . . . ."  *City of El Paso*, 284 S.W.3d at 372.   Here,

---

[3] Indeed, as Tamayo correctly points out, "the question of 'who is a worker's employer'" is often a fact question.   *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983).

Tamayo's pleading alleged that Sheriff Lucio failed to perform the purely ministerial duty of complying with chapter 614. This act, Tamayo alleges, constituted an "ultra vires" ratification of Judge Euresti's termination. In *City of El Paso*, the high court held that "to fall within [the] *ultra vires* exception [to sovereign immunity], a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.*

### b. Tamayo's Causes of Action

Tamayo pleaded that Sheriff Lucio failed to comply with chapter 614 and filed several claims with the trial court to this effect: a declaratory action, a writ of mandamus, and a common law claim for wrongful termination and retaliation.[4] We analyze each claim in turn, construing Tamayo's pleadings liberally in favor of him and looking to his intent. *Miranda*, 133 S.W.3d at 226.

### 1. The Declaratory Judgment Action

The Uniform Declaratory Judgment Act "is a remedial statute designed 'to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations.'" *City of El Paso*, 284 S.W.3d at 370 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b) (West 2008)). It provides as follows:

> A person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument,

---

[4] Tamayo also claims that he requested injunctive relief at the trial court level, but that is not evident in Plaintiff's Fourth Amended Petition.

statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Tᴇx. Cɪᴠ. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ Aɴɴ. § 37.004 (West 2008). With respect to Tamayo's claim for a declaratory judgment, "private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority." *IT-Davy*, 74 S.W.3d at 855. "This is because suits to compel state officers to act within their official capacity do not attempt to subject the State to liability." *Id.* "Therefore, certain declaratory-judgment actions against state officials do not implicate the sovereign-immunity doctrine." *Id.*

Sheriff Lucio argues, however, that Tamayo's request for retroactive wages makes this case a lawsuit for "money damages," thus triggering the sheriff's governmental immunity. *See IT-Davy*, 74 S.W.3d at 853 (holding that "sovereign immunity protects the State from lawsuits for money damages."). Nevertheless, *City of El Paso* holds the following:

> Where statutory or constitutional provisions create an entitlement to payment, suits seeking to require state officer to comply with the law are not barred by immunity merely because they compel the [S]tate to make those payments.

*City of El Paso*, 284 S.W.3d at 371. Tamayo claims that Chapter 614 created a statutory requirement that Tamayo continue his employment until Sheriff Lucio complied with the procedures to terminate him. *See* Tᴇx. Gᴏᴠ'ᴛ Cᴏᴅᴇ Aɴɴ. §§ 614.021–.023. This statute, he contends, created an entitlement or a property interest. *See Turner v. Perry*, 278 S.W.3d 806, 822 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). We agree.

11

In *Turner v. Perry*, the Fourteenth Court of Appeals dealt with a similar issue and found that a school district police officer had a property interest in keeping his job until the district followed its own grievance procedure. *Id.* "A property interest protected by procedural due process arises where an individual has a legitimate claim of entitlement that is created, supported, or secured by rules or mutually explicit understandings." *Id.* Here, chapter 614 "created a property interest: in the absence of a complaint that was signed, delivered, investigated, and supported by evidence," Tamayo had a "legitimate expectation of continued employment." *See id.*; *see also Guthery v. Taylor*, 112 S.W.3d 715, 721–23 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

In light of the foregoing, we hold that the trial court had jurisdiction over Tamayo's declaratory judgment action.

## 2. The Request for Writ of Mandamus

We also find that Tamayo's claim for a writ of mandamus was properly before the trial court. Tamayo requested the trial court to issue a writ to compel Sheriff Lucio to comply with his non-discretionary duty to follow chapter 614. "A writ of mandamus will issue to compel a public official to perform a ministerial act." *Anderson v. Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991). "An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *Id.* Under *City of El Paso*, we hold that this mandamus request was in the trial court's jurisdiction to decide. *City of El Paso*, 284 S.W.3d at 372.

## 3. Common-Law Causes of Action

Tamayo also pleaded common law causes of action such as wrongful termination and retaliation. First, we sustain the plea to the jurisdiction with regard to the retaliation claim because Texas does not recognize a common law action for retaliatory discharge. *See Austin v. HealthTrust, Inc.—The Hosp. Co.*, 967 S.W.2d 400, 401 (Tex. 1998). "Rather than create a one-size-fits-all whistleblower statute, the Texas Legislature has instead opted to enact statutes that protect specific classes of employees from various types of retaliation." *Id.* (outlining various statutes in the Texas Government Code, Health and Safety Code, and Agriculture code, among others, for whistleblowers). Tamayo did not plead any particular statutory retaliation claim, so the trial court's dismissal of this cause of action was appropriate. *See id.*

Second, with regard to Tamayo's claim for wrongful termination, we conclude that the plea to the jurisdiction was appropriate because there is no evidence of waiver of governmental immunity. "It is only where the court can see that, even by amendment, no cause of action can be stated consistent with the facts alleged that the court is without jurisdiction." *Bybee v. Fireman's Fund Ins. Co.,* 331 S.W.2d 910, 917 (Tex. 1960). We find that the trial court has no jurisdiction in the matter concerning wrongful termination.

## C.   Conclusion

Tamayo has alleged facts that affirmatively demonstrate the court's jurisdiction to hear his declaratory judgment action and request for mandamus. *Miranda*, 133 S.W.3d at 226. We hold that his common law causes of action in retaliation and wrongful termination, however, are barred. We sustain his first issue in part and overrule it in part.

13

## IV.   PROPERLY NAMED DEFENDANT

In his second issue, Tamayo contends that Sheriff Omar Lucio, in his official capacity, is a properly named defendant.

### A. Applicable Law

"A plaintiff may sue a governmental employee or official in the person's official capacity, individual capacity, or both." *Nueces County v. Ferguson*, 97 S.W.3d 205, 213 (Tex. App.—Corpus Christi 2002, no pet.) (citing *Denson v. Tex. Dep't of Crim. Justice,* 63 S.W.3d 454, 460 (Tex. App.—Tyler 1999, pet. denied)).   Claims against governmental employees or officials in their official capacities are separate and distinct from claims against them in their individual capacities.   *Id.* at 213–14 (quoting *Vela v. Rocha*, 52 S.W.3d 398, 403 (Tex. App.—Corpus Christi 2001, no pet.)).   "A person sued in his legal capacity is regarded as a distinct legal personage from that same person sued in his individual capacity."   *Id.* at 214.   "A person filing suit against an individual solely in an official capacity thus cannot impose liability or recover damages from that same person in an individual capacity, nor can a suit solely against a person in an individual capacity result in liability or the execution of a judgment against the governmental unit that the person represents in an official capacity."   *Id.* "Accordingly, the capacity in which a governmental employee or official is sued is significant because it affects the party upon whom liability may be imposed and from whom damages may be collected, as well as the defenses that may be raised."   *Id.* (citing *Jackson v. Stinnett*, 881 S.W.2d 498, 500 (Tex. App.—El Paso 1994, no writ)).

In a suit against a person in an official capacity, a plaintiff is actually seeking to

impose liability against the governmental unit the sued person represents, rather than on the individual specifically named. *Id.*; *Rocha*, 52 S.W.3d at 403. The suit is, then, in actuality, one against the governmental unit, which is the legal entity that will be held liable for any judgment rendered against the individual sued in an official capacity. *Nueces County*, 97 S.W.3d at 214.

The capacity in which a governmental employee or official is sued likewise affects the immunity defenses that may be asserted. *Rocha*, 52 S.W.3d at 403. "Persons sued in their official capacity may raise any defense available to the governmental unit, including sovereign immunity." *Nueces County*, 97 S.W.3d at 214. "An individual sued in an official capacity may enjoy the protections of sovereign immunity to the same extent as those protections are available to the person's employer and thus, if the governmental unit would be immune due to sovereign immunity, so is the governmental official sued in his official capacity." *Id.* (citing *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. App.—Houston [1st Dist.] 1995, no writ)).

### B. Discussion

As explained earlier, Lucio's claim of governmental immunity in his official capacity is waived for the reasons elucidated in *City of El Paso*: "suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity." *City of El Paso*, 284 S.W.3d at 372. Here, Tamayo's pleadings assert that, as Sheriff of Cameron County, Sheriff Lucio had the ministerial duty to follow the procedures set forth in chapter 614 when ending Tamayo's appointment as a deputy. See TEX. GOV'T CODE ANN. §§ 614.001–.104. We agree. "An action to determine or

15

protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars." *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997).

Because we conclude it was appropriate for Tamayo to name Sheriff Omar Lucio in his official capacity, we sustain Tamayo's second issue.[5]

## V.    CONCLUSION

Having sustained Tamayo's first issue in part, and sustained his second issue in full, we reverse and remand this case to the trial court for proceedings consistent with this opinion.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
18th day of July, 2013.

---

[5] In his briefing, Sheriff Lucio contended that because Tamayo was employed (and paid) by the Cameron County Courthouse Security Department and not the Sheriff's Department, there is no "position" to which to return him.   Further, Sheriff Lucio argued that the Sheriff's Department should not be the one to pay any retroactive "back wages" because Tamayo was not his employee.

This briefing is premature.   The focus of this memorandum opinion was to determine if the trial court had jurisdiction to hear Tamayo's lawsuit.   We have determined that the trial court has jurisdiction over Tamayo's declaratory judgment action and his request for mandamus.   The merits of the case, and any appropriate relief, if necessary (such as a reinstated position or retroactive wages), must be considered before the trial court, not this court.

16